1834.

Everson
v.
Kirtland.

## EVERSON *vs.* KIRTLAND.

A covenant, to cause land to be conveyed by a good and sufficient warrantee deed, is not complied with by the mere giving of a deed, with warranty, where the grantor has no title to the land, or where his title is imperfect.

To constitute a good and sufficient deed of land, within the meaning of such a covenant, the conveyance must be good and sufficient to convey a valid title to the premises described in the covenant.

October 21.

THIS was an appeal from a decree of the vice chancellor of the fifth circuit. In January, 1829, the complainant sold to the defendant, C. Kirtland, a farm in the county of Oneida, and was to receive in part payment therefor, three lots of land, in the state of Ohio, described in the contract as "lots 37 in the second quarter, and 33 and 34 in the third quarter, of the sixth township, in the second range, of the tract appropriated for satisfying warrants for military services, as granted by the president of the United States on the first of June, 1825; the said lots each containing 100 acres." Which lands the defendant covenanted to cause to be conveyed, to the complainant, by a good and sufficient warrantee deed, in fee simple, free and clear of all encumbrances; the deed to be executed by Martin Kirtland, the father of the defendant. In February, 1829, the complainant received a deed, from Martin Kirtland and wife, which he then supposed to be a compliance with the contract. But upon going to Ohio to take possession of the lands, he found them in possession of others claiming title thereto, and ascertained that Kirtland never had any right or interest therein. He thereupon wrote to the defendant, informing him that his father had no title, and requested

payment for the Ohio lands, at the rate of $2,50 per acre; the price at which they had been estimated upon the sale of the farm in Oneida county. The defendant admitted that his father had no title to the lands described in the agreement, and the deed. But he insisted that there had been a mistake; and that the lands which he had intended to give in payment for the farm were in the 5th, instead of the 6th township. And he thereupon procured a deed to be executed, by Martin Kirtland and wife, purporting to convey to the complainant lots No. 37 in the 2d quarter and No. 33 and 34 in the 3d quarter of the 5th township in the 2d range, instead of the same numbers in the 6th township; which deed the complainant refused to receive as a compliance with the defendant's agreement. This deed contained a recital, that the lands belonged to Ira B. Kirtland at the time of his death, by virtue of a conveyance from Martin Kirtland, and the other heirs of Martin Kirtland formerly of Saybrook, deceased; that Ira B. died in 1828, without issue, leaving Martin Kirtland, the grantor, his heir at law; and that the widow of Ira B. had released her right of dower. The complainant filed his bill, for the purpose of rescinding the agreement to receive the Ohio lands in part payment for the farm which had been sold and conveyed to the defendant, and to obtain other compensation therefor. The defendant, by his answer, insisted that there was a mistake; that the lands mentioned and described in the last deed from Martin Kirtland and wife were the lands intended to be given in payment for the farm; and that the complainant ought to be compelled to accept that deed as a fulfilment of the agreement. From the testimony, it appeared that in 1825 a patent was issued for the lots described in the last deed, in conformity with the general practice of the land office, to Martin Kirtland, the son, and the other heirs of Martin Kirtland, who was the soldier entitled to the land for his military services, the grand-father of the defendant. It also appeared, to the satisfaction of the vice chancellor, that the defendant sold the lands as lying in the sixth township, by mistake, but that the complainant contracted for them as being in that township. And as neither the defendant nor his father could give a good title to the lands in township No.

**630**

1834.

Everson
v.
Kirtland.

5, the vice chancellor decreed payment of the amount for which the lands were to have been taken in payment towards the farm, with interest and costs. From this decree the defendant appealed to the chancellor.

*E. Allen*, for the complainant. The covenant in the agreement to cause the lots to be conveyed by a good and sufficient warrantee deed, in fee simple, free and clear of all encumbrances, is a warranty of title, which was not satisfied by the conveyance of Martin Kirtland. And the complainant not deriving any title under that conveyance, the defendant is liable on the covenant ; and the failure of title being admitted in the answer, there was no necessity of a trial at law before the bill filed. The expression, " good and sufficient warrantee deed, in fee simple, free and clear of all encumbrances," refers to the title which the deed shall convey, and not merely to the covenants which the deed shall contain. The acceptance of the deed, with a covenant for quiet enjoyment only, shows that the complainant intended to rely on the covenant contained in the contract, to guard against a defect of title. A covenant to execute a good and sufficient deed of a piece of land, does not mean merely a conveyance good in point of form—that would be a covenant without substance ; but it means an operative conveyance, one that carries with it a good and sufficient title to the lands conveyed. (2 *John. R.* 595. 10 *Id.* 266.)

In 11 *John. R.* 525, the covenant was to execute a deed with a warranty of the title, except as to quit rents ; and the court held that the agreement meant, not merely that the party should execute a deed containing covenants of warranty, but that he had the power to execute a deed which would carry with it an indefeasible title, subject to no other encumbrance or charge, except the quit rents, and that a tender of a deed, good in form, was not enough if the premises were encumbered otherwise. This case is not like those cases in which a person covenants simply to give a conveyance or deed, not saying with warranty, and receives the consideration, using no language implying an intent to warrant the title. In those cases, it has been held that the tender of a

deed executed in due form is a compliance with the agreement, however defective the grantor's title may be.

Nor was the acceptance of Martin Kirtland's deed a discharge of the contract. There are cases where the acceptance of a deed is deemed a discharge of a covenant to convey. Such are those in 2 *John. Rep.* 506, and 10 *Id.* 297.

In 10 *John. Rep.* 297, the court say that parties may enter into covenants collateral to the deed ; or cases may be supposed where the deed would be deemed only a part execution of the contract, if the provisions of the contract clearly manifest such to have been the intention of the parties. So we say in this case. The delivery of Martin Kirtland's deed was only part performance of the agreement, and not accepted as a satisfaction, unless it conveyed a good title. If the acceptance of the deed could, under any circumstances, be considered a satisfaction of the contract, it clearly cannot be in equity, since it was accepted under the mistaken supposition that it conveyed the title, and the mistake having been caused by the defendant. If we had brought an action at law on the covenant in the deed, perhaps this objection would not have been well made ; for although it is the settled rule at law that an action will not lie on a covenant for quiet enjoyment until after an eviction or an action brought to obtain possession, (*see* 3 *John. Rep.* 471, 15 *Id.* 483, 5 *Id.* 150, 1 *John. Ch. Rep.* 213,) such is not the rule in equity where the vendor has not had possession, and admits he had no title.

In *Abbott* v. *Allen*, (2 *John. Ch. Rep.* 519,) the chancellor decided that a purchaser in possession could not have relief until after eviction ; and the principal reason is, that a court of chancery will not try the validity of the outstanding claim. But he inclined to the opinion, that an outstanding encumbrance, admitted by the party, might form an exception where there was a covenant against encumbrances. He says, that a previous eviction or trial at law is in general indispensable, and that all the cases in equity are grounded on a failure of title duly ascertained. From which, I understand, that if the failure of title is duly ascertained, a court of chancery will give relief. In 21 *Viner*, 504, *pl.* 1, a bill to have

1834.

Everson
v.
Kirtland.

1834.
Everson
v.
Kirtland.

purchase money refunded was sustained, because the defect of title was admitted in the answer. In *Johnson* v. *Gere*, (2 *John. Ch. Rep.* 546,) the vendee being in possession, an action of ejectment was brought by an outstanding claimant, and the vendor was proceeding to foreclose a mortgage given for the purchase money, and the chancellor granted an injunction against the foreclosure until the title should be settled in the action of ejectment.

The defendant is liable, because he sold the Ohio lots to the complainant and received the consideration. He was the person with whom the complainant dealt, and the only person beneficially interested in the contract. He procured Martin Kirtland's deed to be drawn, executed and delivered ; and if there was any mistake in the deed, as the defendant pretends it was his mistake, it is right that having received the consideration he should be called on to refund it. The defendant is liable on the ground of mistake or fraud, in misrepresenting or concealing the state of the title. The rule is settled, that mistake is a good ground for relief in equity, whether it is set up as a defence to a specific performance of a contract, or the injured party comes as complainant for redress.

In *Roosevelt* v. *Dale*, (5 *John. Ch. Rep.* 174, 2 *Cowen*, 129, *S. C.*, 2 *John. Ch. R.* 596, 4 *John. R.* 12,) the evidence of the witnesses showed clearly that the complainant relied wholly on the representation of the defendant. The remarks of Judge Spencer in *Pitcher* v. *Livingston*, (4 *John. R.* 14,) are fully applicable, namely, that it was a rare thing for a purchaser to investigate the seller's title ; and that in most cases it was impossible ; that he generally relied on the allegations of the vendor, and on his covenants. The defendant says the contract should be corrected so as to be for lots in No. 5. Suppose it had been so originally, the complainant would not have been bound to receive the deed, but might have called for a repayment of his money, unless the defendant could give a good title. This is the language of all the cases. (2 *John. Rep.* 595. 10 *Id.* 266. 6 *John. Ch. Rep.* 222. 3 *Cowen*, 445. 14 *John. Rep.* 363. 11 *Id.* 525.)

1834.

Everson
v.
Kirtland.

In *Seymour* v. *DeLancey*, (6 *John. Ch. Rep.* 222, 3 *Cowen*, 445, *S. C.*,) it is distinctly laid down that a specific performance will not be decreed, unless the party can give a good title. To amend an instrument on the ground of mistake, the court will require the strictest proof of the agreement. (17 *John. R.* 378. 2 *John. Ch. R.* 214. *Idem,* 630.) Another part of the defendant's misrepresentation was, that he sold the whole interest in the lots, and represented Martin Kirtland's title to be a perfect title; whereas, he had title to only one undivided sixth part, so that the consideration has wholly failed. The defendant was also guilty of fraud. If he knew that Martin Kirtland had but an undivided interest in the Ohio lots, then he was of course guilty of fraud, in saying that his title was perfect; for the representation must be considered as co-extensive with the title which was sold, viz. the whole title. If the defendant did not misrepresent, yet he fraudulently concealed the state of the title; and a fraudulent concealment is equivalent to a false representation. (*See* 4 *John. R.* 1, 13, *per Van Ness, justice.* 3 *John. Ch. R.* 375. 13 *John. R.* 325.)

The defence wholly fails : 1. Because there was no clerical mistake ; 2. Because the mistake as proved was not material, and was the mistake of the defendant only ; 3. Because the defendant cannot give title to any lands, and can give only a pecuniary satisfaction by re-payment of the purchase money ; and 4. Because he was guilty of fraud. The defendant cannot object that our remedy is at law : 1. Because he should have demurred, or raised the objection by his answer; (2 *John. Ch. Rep.* 339, 369 ; 4 *Id.* 287 ; 5 *Id.* 193 ;) 2. Because the matter is complicated ; and 3. Because we could not sue at law until the question of title was first settled by ejectment. In 3 *Caines*, 111, the rule of damages in cases of this kind was very fully considered and settled, to wit : the consideration expressed in the deed, with interest. (4 *John. Rep.* 1. 9 *Id.* 324. 13 *Id.* 50. 2 *Wendell*, 399.) The defendant ought to pay the expenses of the journey to Ohio. He ought also to be charged with costs. (*Hopk. Rep.* 344. 1 *Paige's Rep.* 131.)

1834.

Everson
v.
Kirtland.

*S. Beardsley,* for the defendant. A mistake was made in the covenant and in the deed ; .the word *sixth* being inserted instead of *fifth.* The patent was for the *fifth,* and not the *sixth* township. The defendant owned the lands in the *fifth,* but had none in the *sixth ;* nor had any of the Kirtlands' land in the *sixth.* The complainant intended to contract, and did in fact really contract for the land in the *fifth,* and not in the *sixth* township. The covenant of 17th January, 1829, has been fully performed by the defendant. No action at law, therefore, could have been maintained on that covenant as a subsisting contract. It is said, on behalf of the complainant, that an action at law could have been sustained on the covenant of warranty contained in the deed given in pursuance, and in performance of the covenant of the 17th of January, 1829. Although the general rule is admitted to be, that such covenant of warranty is only broken by a legal eviction, yet it is insisted that the rule is otherwise where one yields to a paramount title, or where possession of the premises cannot be obtained, in consequence of their occupation under a better title. But if this is so, yet it is clear that Martin Kirtland could have defended himself against such an action, by filing a bill to correct the mistake in the deed.

Fraud is averred in the bill ; but if an action on the case in the nature of an action of deceit had been brought by the complainant against the defendant, he must have averred and proved, amongst other things, that the defendant represented that Martin Kirtland had good title to lands in the *sixth* township, when he knew he had not. 1. But no such representation as to land in the *sixth* township is shown. 2. The covenant could not be used to prove such representation.. 3. If it could, it might be shown that the covenant was so written by mistake. 4. Or a bill might be filed to correct the mistake, and thus get rid of the covenant, as such evidence. This is not a bill for a specific performance of any contract. 1. Not of the real contract between the parties ; that was as to land in township *five.* Such a bill would have charged the mistake ; asked to have it corrected, and as corrected performed. 2. Not of the covenant as entered into ; that has been performed. Nor is this a bill filed to correct the mistake in the contract

and deed, which might very properly have been done. We set up and prove the mistake, and thus entitle ourselves to have the covenant and deed corrected. And when they have been corrected under and by a decree of this court, the complainant's ground for relief is destroyed. The mistake may be set up and shown by way of defence. (2 *John. Ch. Rep.* 585, 596, 598. 3 *Atk.* 388. 2 *Id.* 98, 9. 6 *Vesey, jun.* 328. 1 *Vesey & Beame,* 165. 3 *Stark. Ev.* 1018, note 1. 3 *Hen. & Munf.* 144, 288.) There is perhaps no reason why the mistake should not be set up in this case by way of defence, as it might have been, had a bill been filed for a specific performance. Such a bill would have proceeded on the ground that the real contract was for lands in the *sixth ;* so does this bill. The proof must be pertinent to the ground for relief, as stated by the complainant; and the relief must be on the ground stated and proved. (2 *John. Ch. Rep.* 339, 355. *Id.* 475, 8. 6 *John. Rep.* 543. 3 *Wendell,* 653. 1 *Cowen,* 734.) Authorities cannot be necessary for these principles; they will not be questioned. The inquiries must be, has the complainant stated a good ground for relief ? Has he proved the facts stated by him ? Has he stated the real case as it existed between the parties ? 'If not, then I apprehend the court will not look out for grounds, other than those stated, on which to predicate relief. The decree, even if it should be for the complainant, yet, should not, as is supposed, be for the $750 and interest; but for the actual damage only, which is the real value of the land.

The decree directs payment of the $750 and interest, but does not direct the complainant to release the covenants in the deed delivered to him.

The prayer for relief, except as to the expenses of the journey to Ohio, is not a general prayer, but is special ; that is, that the $750 and interest may be decreed. It is insisted, 1. That no other relief than that prayed for can be granted ; the rule being that where the prayer is special only, the party must have that, or can have no relief. 2. That the complainant is not entitled to that relief, in any event; but if to any, it is to a decree for the value of the Ohio lands.

THE CHANCELLOR. The vice chancellor has put his decision in this cause upon the ground of a mistake of both parties as to the existence of a title in Martin Kirtland, in the Ohio lands intended to be conveyed in payment for the Vernon farm. The complainant contracted for lands lying in township No. 6, although he would probably have made the bargain as readily if he had been informed that the lands he was to receive in payment lay in the other township. Upon this supposition, if the defendant or his father had really owned the lands in township No. 5, it probably would have been doing no injustice to the complainant if he had been compelled to take the lands described in the patent. But although, from the testimony, I have no doubt that the defendant intended to sell, and to procure a deed from his father for the lands mentioned in the patent, and that he really misread the description in the patent, I think there is sufficient evidence, from the testimony of his own witnesses and from his exhibits, to show that he intended to impose a title upon the complainant which he knew to be imperfect. In the first place, the person who drew the original contract between the parties, although he described the land correctly, except as to the number of the township which was undoubtedly misread, and gave the precise date of the patent, yet he appears to have stopped short in his description in not stating to whom the patent was given. This agreement bears date on the 17th of January ; and yet exhibit B., which bears date, and is proved to have been written, about a fortnight before, contains a false recital, which is also contained in the second deed executed by the defendant's father, that Ira B. Kirtland was seised of the Ohio lands by virtue of a conveyance from Martin Kirtland and the other heirs at law of the deceased soldier, and that such lands had come to Martin Kirtland by descent from his deceased son, and by a quit claim from the widow. The defendant, therefore, when he procured that deed to be drawn, in which his own name was originally inserted as the grantee from his father, must have known that the five brothers and sisters of his father were entitled to five sixths of the land under the patent, as the heirs at law of his grand-father ; and this recital, which his father now swears was absolutely false and unfounded, must have been

1834.

Everson
v.
Kirtland.

inserted therein for the purpose of deceiving and imposing upon the complainant, and to induce him to suppose the title was perfect. There is the more reason to suspect that such was the intention of the defendant at that time, from the fact that a similar imposition was actually attempted to be practised upon the complainant in the deed which was offered him on his return from Ohio. Even the father was imposed upon in that case; for he swears that he would not have signed that deed if he had known such false recitals were contained therein. The father probably honestly supposed, as he states, that his title was perfect under the patent, as heir to his son Ira, to whom he had promised the land before the patent was obtained. The only conclusion I can draw from these facts is, that the defendant was, from the beginning, aware that his father's title to the Ohio lands was defective, and that five sixths of the land belonged to other persons. That he concluded in the first place to take a deed from his father, containing these false recitals, showing a title through a conveyance from all the patentees to his brother Ira, and through him to his father; and that exhibit B. was prepared accordingly. That finding a deed with warranty would be required from himself in that case, he concluded to keep back the patent, and to give an agreement for a warrantee deed from his father, concealing the fact that the patent was to the father and the rest of the heirs also. In this he probably would have succeeded, had it not been for his own mistake, in misreading the patent, by which the wrong township was inserted in the agreement and in the deed. And finding that he had made that blunder, he then attempted to do what he had contemplated doing soon after the execution of the agreement; that is, to impose upon the complainant, by a deed from Martin Kirtland directly to him, containing false recitals which apparently showed a good title in the father to the whole of the Ohio lands, under the patentees.

The covenant of the defendant was, to cause the Ohio lands to be conveyed to the complainant by a good and sufficient warrantee deed, to be executed by Martin Kirtland and wife, free and clear of all encumbrances. And neither of the deeds, which were given or offered to the complainant, would have

been a compliance with the terms or the spirit of the covenant; even if there had been no mistake in the number of the township. A covenant to cause to be conveyed by a good and sufficient warrantee deed, is not complied with by the mere giving of a warrantee deed, where the grantor has no title to the land, or where his title is imperfect. It must be a deed good and sufficient, both in form and substance, to convey a valid title to the land which the covenantor has agreed should be conveyed. But the deeds in this case were not good, either in form or substance. Conveyances for lands in the state of Ohio were originally subject to the provisions of the ordinance of congress of 1787, relative to the North Western Territory; which ordinance is still the law of that state, unless it has been changed by statute. By the former, as well as the statute law of that state, a conveyance of land, to be valid, must be executed in the presence of two witnesses. And the supreme court of the United States has decided that a deed of lands in Ohio, executed in the presence of one witness only, although duly acknowledged and recorded, is absolutely void. Neither of the deeds in the present case were executed in the presence of more than one witness; nor had the grantor any good and available title to convey, except as to an undivided portion of the lands.

If there was no fraud in the case, perhaps the objection might have been made that the complainant had a perfect remedy at law upon his covenant. But as that objection was neither made by demurrer, or in the answer of the defendant, it is too late to make it at the hearing.

The vice chancellor certainly has been sufficiently favorable to the defendant, in only charging him for the value of the land as fixed by the parties, in their estimates, at the time of the execution of the agreement, and as specified in the deed. This was the rule adopted by the supreme court, in the case of a bona fide vendor who covenanted to convey lands to which he believed he had a valid title. And the defendant may think himself fortunate, that the court did not direct a reference to a master to ascertain the value of the lands in township No. 6, which he agreed to convey, and charge him with the full value of those lands, and the interest thereon from the

time he should have conveyed them, according to the terms of the written agreement. As those lands were in the hands of actual occupants, the value thereof, with their improvements, would probably far exceed the estimated value of $2,50 per'acre. And a party who attempts to commit a fraud, if he makes a slip, is not entitled to relief against his own mistake in favor of the party intended to be defrauded.

The appellant has no right to complain of this decree, as it is as favorable to him as the circumstances would justify. It must therefore be affirmed, with costs.