Judge Ewing
delivered the opinion of the Court.
On the 19th of January, 1785, William Fleming entered a caveat, to prevent the issuing of a patent to Isaac Hite, for four hundred acres of land, on Goose, creek, bet cause of its interference with a thousand acre survey paade on the 9th of February, 1783, and patented 20th of April 1784, to said Fleming,
On the 28th of June, 1788, William Fleming acknowledged the receipt from David Ross of eight pounds towards defraying the expenses incurred in surveying and obtaining a grant for the land in dispute with Hite, and towards paying the expenses of one half of said suit, and bound himself, when the same was ended, to convey one moiety of said land to Ross and the representatives of Janet Douglass.
Ross, claiming to have acquired the interest of the representative of Janet Douglass, by purchase from her husband, as her sole heir—on the 26th of June, 1815, sold his whole interest in said land, to James Bate, for four thousand dollars, to be paid in instalments, with interest from certain periods fixed by the stipulations of the contract.
At the October term of the Botetourt County Court, 1795, in the State of Virginia, Fleming’s will was recorded, by which, after certain specific devises, he devised all' the residue of his lands in Kentucky to his daughters, Anna and Priscilla, subject to a certain contingent interest therein, to. Doratha Bratton.
Anna subsequently intermarried with George A. Baxter, and Priscilla with Samuel Wilson.
In. June, 1816, Bate filed his bill against Fleming’s representatives and said Ross and Zachariah Taylor and *199 Others, alleging that, the conveyance had never been made by Fleming, or his representatives, to Ross, for the one half of said land, and that said Taylor had contracted for the purchase of the whole, with full notice of his interest therein; and praying a specific execution of Ross’ contract with Fleming, and of his with Ross.
Decree and apt peal.
as having been A caveat filed in 1785, never tried, and the last order a continuance —in 1795—af-tei‘ the plaintiff was dead: the case may be regarded—after 20 years or more, having then (in ’95) terminated or abandoned, and a bond for a conveyance, to be made when the suit was ended, as then due,
Process was executed on Taylor, in July, 1816, and he subsequently answered the bill, in which he admits his contract of purchase; substantially admits notice; exhibits a deed from the devisees of Fleming, dated in August, 1816, and, by subsequent amendment, pleads the statute of twenty years limitation, and relies upon the lapse of time as a bar to the complainant’s demand. The bill being unanswered, was taken for confessed against Fleming’s representatives.
Ross having died, the suit was revived, against Triplett, his administrator de bonis non, and against his devh sees and heirs, and was taken for confessed against al* but Triplett, who answered—making his answer a cross bill against Bate, and praying a specific execution of the contract with Bate, and the payment of the money and interest, by Bate to him, as the representative of Ross»
Bate answered, controverting his right to the interest, as Ross had failed to make him title, and put him into possession of the land, which he had a right to expect.
The Circuit Court decreed a specific execution of the contract in favor of Bate, against Ross and Fleming’s Veprsentatives and Taylor, and the payment, by Taylor, of the one moiety of the rents from the time he took possession under purchase; and decreed Bate to pay interest to Triplett, the administrator of Ross.
From this decree Taylor has appealed to this Court»
The record of the proceedings, in the Supreme Court for the district of Kentucky, on the caveat—Fleming vs. Hile, are produced, and the last step taken in the case, was a continuance at the October term, 1795, which was after the death of Fleming. The complainant alleges, that it terminated at that time, and there being no other step shown to this Court, as having been taken in *200 the cause subsequent to that term, it may be regarded ad terminated or abandoned, at that time. The right of ac-’ tion accrued on said covenant by its terms, at the termw nation of said caveat; From that time to the commencement of this suit is above twenty years.
Suits in chancery are not embraced in express terms, by the statutes of limitations; Jyet they are, in general, held to be barred by the same lapse of time, that would bar a suit at [aw for the same wrong.
To bar an ejectment, or suit in chancery for 'a conveyance, an adverse possession for 20 years by the defendant and those under whom he claims, must be shown. There is no statute barring an action of covenant upon a title bond.
A presumption of payment, release, or satisfaction, arises (where there is no statute bar) at law, or in chancery, from lapse of time—a presump tion merely—not of law, but of fact -which coun tervailing proof may repel.
Detail of circum stances held sufficient, when taken together, to rebut the presumption,arising from lapse of time, that a bond for a title had been satisfied or released, though the date of the bond was 28 years before the suit, and the eVent upon which the conveyance was to be made, -occurred 21 yearS before the suit.
*200 Though the statutes of limitation do not in terms apply to Courts of chancery, Chancellors have ever considered their Courts as within the spirit of their provisions, and have generally adopted them, subject to some restrictions.
But in this case, we know of no statute, that would at Jaw present any absolute bar to the complainant’s demand.
It is not alleged or pretended, that the land in contest was in the actual possession of Fleming, or anyone Claiming under him, adverse or otherwise, for twenty year's before suit commenced, or that it was in the actual possession of any oile claiming under Fleming at anytime before Taylor took possession, which was after the suit was commenced.
The limitation to the action of ejectment at lkw, could, therefore, not be relied on. And there is no statutary limitation barring the complainant’s action of covenant at law, on the bond.
But notwithstanding there is no statutary bar) lapse of time has ever been regarded, at Iaw$ as well as in chancery, as a presumption of payment.) release or satisfaction.
But this presumption, like all other presumptions of fact) is susceptible of being counteracted, rebutted, or explained away by countervailing circumstances;
It is a presumption of fact, and not a presumption of law. The former is susceptible of explanation by facts, the latter is inexorable and imperative.
The first question to be considered in this case, is— are the circumstances exhibited in this record, sufficient to counteract or rebut the presumption of release or satisfaction from lapse of time?
We are satisfied they are. .
First. Boss lived in Richmond, and must have been incumbered witJi much business from his wealth. Flem *201 ing lived in Botetourt, and the superintendence óf the caveat was entrusted entirely to him. The cavéat was depending in the Supreme Court in the district of Kentucky, which, from the distance of its sessions, from the residence of both Fleming and Ross, made it necessary for the former to entrust the preparation and management of the suit to agents-. Owing to the danger of the times, and the consequent difficulty of procuring the execution of an order of survey-, the suit had been a long time depending. Ross was apprised, by the letters of Fleming, shortly before his death, of its continuing pendency, and entire want of preparation for trial, owing to the danger of the times. It is reasonable to be presumed, from the above circumstances, that Ross gave but little attention to the suit, and was not apprised of its termination, within any short period after its abandonment. Nor does it appear that he was apprised of the death of Fleming, at any reasonable timé after that event. Nor is it to be reasonably presumed, that he was, from the distance he lived from him; and if he was apprised of it, he might reasonably suppose that the suit would be revived in the names of his heirs.
When it was terminated, does not appear to have been known to him; and from the distance of the Court from his residence, could not be reasonably presumed to have been known. And as his right of action accrued only at the termination of the suit, he could not be chargeable with laches in failing to prosecute his claim, until he was apprised of his right. Besides, it does not appear*, that said caveat was ever terminated by any order of the Court, or step taken on the record. If he had consulted the record, he would have found that the last step taken was a continuance of the case, by which he would have understood that the suit was still pending. Nor could he have come to any other reasonable conclusion^ than that the suit would have been in due time revived and prosecuted to a final termination. During all the period that this reasonable expectation may have been indulged, Ross could not have been chargeable with laches. Nor should the presumption from lapse of time have commenced running against him.
A suit for a specific execution of a land contract may be prosecuted in any jurisdiction where a def’t is found.
A suit for partition must be in the jurisdiction in which the land lies.
A patentee binds vey Talf the íand 'to another, and terestapasses *tó his two dattghoTone ofThem, in a letter, written (as he says) after consultation oftheIo*w>aIin answer to an apUielnterestoftbe two daughters, An^and men! tions that the longs toalMr. r! the obligee in the husband °could HstCwHbaJ)andy nor affect her hk^eknowledy ments—this let-showteithat§ she never had any tiasácirctmstancé t0 the pre|u0I^Pti°“ arisins time, that the ’especial!™ as the admission -^tei-est^of the very party who made it-
*202 Again—though it was competent for Ross to have prosecuted a suit for a specific execution of his contract, in the state of Virginia, against the heirs or devisees of -Fleming, it was more customary to prosecute a suit where the land lay. Indeed, in practice it was rare to adopt any other course. And such a course was the more appropriate in this case, inasmuch, as by the same suit a division of the land could have been obtained, as well as a specific execution of the contract. Which former object could not have been attained, except where the land lay. The land lay in Kentucky, and Ross and his representatives have ever lived in Virginia—many -hundred miles -from it»
Besides, though Fleming and Ross lived in the same state, they lived at a distance from each other, which, though as a separate and distinct circumstance-, might not be sufficient alone to repel the presumption of satisfaction from lapse of time, it is entitled to some weight*
Again: George A. Baxter, the husband of one of the devisees of Fleming, in answer to a letter from the complañíant, proposing to buy the land in contest, as well as the settlement right of Fleming, on the 20th of April, 1814, says: “Some time ago I received the letter you “ directed to Mr. Wilson (the husband of the other dev- « jsee) and myself. I have since that time written to ' J . . . . , , . _XT “ Mr. Wilson, for his opinion on the subject. We are “ k°th disposed to sell the land in question. The quan- “ tity of the land is nine hundred acres—four hundred “ °f a settlement right on the river, and five hundred of “ a pre-emption adjoining, and remote from the river; “ the other half of ’the pre-emption belongs to Mr. Ross. u Whether the price you offer amounting to about nine “ dollars per acre, (being |8000) is a sufficient price, « we are not so well qualified to determine, &c.”
In this letter, written within the twenty years, and evidencing, upon its face, to have been written upon due deliberation, and consultation with "Wilson, the husbaud °f the other devisee, and from the close connection existing between husband and wife, it may be reasonably presumed, written upon full consultation with their wives, acknowledges unequivocally, the right of Ross to the- one half of the one thousand acres.
a def’t in chan' ceU liat5 an equitable title to the land in controversy before the suit was commenced (though it was consummated by a conveyance afterwards,) may avail himself of any defence—make any objection to evidence, which his vendor could have relied upon, notwithstanding, that, as to the vendor, the bill is taken foy confessed: his answer could not be used as evidence against his vendee; neither pan the admissions resulting from his failure to answer. '
■But it is contended that this letter is incompetent evidence, and argued, that inasmuch as the husband could not make a conveyance of the wife’s land, neither could he by an acknowledgment, affect her interest in landed property. If the bond remains unsatisfied, the land is not the land of his wife, and could not equitably vest in her. The acknowledgment is bqt the admission of a preexistent right in Ross, which had its. origin long prior to any interest in his wife, and cannot be construed into the acknowledging away from the wife, any interest of which she had any rightfql claim, or assimilated by analogy, to the conveyance of the wife’s land. The argument is predicated upon the hypothesis, that the wife has the right to the land claimed by Ross, when it is contended that she has no equitable right to it, which is evidenced by the bond of her father, and which, if un-. satisfied or unreleased, is conclusive of the fact. The admission amounts only, to the admission of the fact, that the bond has not been satisfied, extinguished or released. It passes no right from the wife, but is used, and only intended to be used, as a circumstance, with others, to rebut the presumption, against the equitable validity of a preexisting bond.
Besides, the admission is against the interest of the husband as tenant for life, and against his interest, as being directly responsible out of his own pocket, in an action of covenant on the bond at law. It is therefore not to be reasonably presumed that he would have made an admission, so manifestly against his own interest (if he would against the interest of his wife,) if it were not true.
From these circumstances taken in connection, and others, in this record, which we deem unnecessary to enumerate, we cannot indulge the presumption, that the covenant of Ross has ever been released, satisfied or extinguished.
But it is contended that the complainant has not sustained the claim of Ross to more than one fourth of the *204 land in contest. That his purchase of the interest ofIhe other fourth from the representative of Janet Douglass, is not made out by proof, taken on reasonable notice.
A notice to take depositions by •which the party notified will be enabled, by using reasonable enqui ry and industry, to attend, is sufficient.
A party was notified that a deposition would be taken on Monday, at the residence of the witness in W, if she Resided there; if not,ouoneofthe two following days, at a tavern in ■ that place; and, that another deposition would be taken at another place, sixty miles from W, on Thursday. The first
On the other hand, it is contended, that the notice, was reasonable and the proof sufficient; and that, if it is not, it was not competent for Taylor to take advantage of the defect of proof sustaining the derivation of title, or of the lapse of time, inasmuch as the bill is taken for confessed against Douglass’ heirs.
We cannot sustain this latter proposition.
If it were admitted, that Taylor was a purchaser pen-. dente lite, by having consummated his legal title after the. commencement of the suit, he had an equitable claim by contract before, as admitted by the bill. And being invested with this equity he had the right to set up and rely upon any defence, tending to defeat the complainant’s equity, which would be competent for his vendors to rely upon. As the answers of his vendors could not be used as evidence against him, to defeat his equity, or-curtail him in any privilege, which might be necessary to defend his right, or defeat the right of his adversary; so the failure of his vendors to answer, should not be permitted to work a more pernicious effect against his interest.
But the objection made to the depositions, on account of the unreasonableness of the notice, is not, in our. judgment, tenable.
The depositions were taken at the Eagle Hotel in the. city of Richmond, Virginia, on Thursday, the 4th day of May, 1820. The notice advised the defendants that, on the first Monday in May, 1820 (which was the first day,) the deposition of Mar.y Ann Craig would be taken at her own house, in Williamsburg, if she lived there; if not, that it would be taken on that, or one of the two following days, at the Raleigh Tavern, in said place; and on the first Thursday in May, 1820, at the Eagle Tavern in Richmond, Virginia, the depositions under consideration would be taken. It is proven in the record, that Mary Ann Craig had resided in Williamsburg, for many years, but had died before the time designated for taking her deposition. And also, that Richmond was about sixty miles from Williamsburg,
witness liadlived at W, but was dead: that fact, and so that no deposition would be taken there, would have been ascertained by the party notified, by reasonable enquiry, so that he would have had ample iime to travel the 6P miles, apd attend in season at the other place: the ’notice1 wa^ therefore good.
The act of Virginia directing the course of descents, was in force from Jan. 1, 1787, and by it, the husband is heir to the wife, (and the wife to the husband )| who dies withouf other kindred. "
A decree dil.ect„ ingan assessment 13 subject to corred tionmthe court below, and will ”ot be reversed here; but when a caase \s to be* remanded, suf gestions, as to b^made?1’ ^ In the case of an occupant who was a purchaser with notice of a paramount equity—the rents of mentsase^istled when he entered, sed"1 separately! Upon that part proved'dby 'the occupant, there, er assessment of the rents, & the sof'and^Rthe rents of that part provements, the pccupant must pay the balance; but, if the imSetheerontseof plat part, the occupant, who took and held the possession tortiously, can have no decree for a balance in his fivor; for he cannot bring the true owner in debt (above the rents) for improvements made against his will.
*205 Notices to take depositions should not be scanned with technical precision. If they afford to the party notified, the means by the use of reasonable enquiry and industry on his part, to be at the place designated at the time fixed, it will suffice. Now we cannot but believe, that i'f any one of the defendants had attended at Williamsburg, on Monday, and made reasonable enquiry for Mary Ann Craig and her residence, that he must have learned that she had lived there, but was dead, andlearnipg the fact of her death, that he would at once have come to the conclusion, that it was unnecessary for him to remain longer, to attend to the taking of her deposition; and of course as a reasonable man he would have set off for Richmond the next day. If so, he had full time to arrive at Richmond, by Thursday the. 4th, to attend to the cross-examination of the' witnesses whose depositions were taken at that place.
These depositions being admitted, they prove, taken in connection with the marriage license and certificate of marriage, that Janet Douglass, intermarried with Thomas Donnelly, and died without issue, qr. relations in the country, after the 1st of January, 1787. From which time, the act of Virginia directing the course of descents, was in force; in the latter part of the 12th section whereof, is the following provision: ‘fond if there be no kindred either on the one part or the other (meaning on the side of father or mother,) the whole shall go to the wife or husband of the intestate.”
They, also, prove the execution of a deed from said Donnelly to Ross, for his interest in the land claimed by the covenant, which is exhibited in the record'. By which the equitable right of Bate to the one half of the land in contest, by virtue of his purchase from Ross, is completely made out.
That portion of the decree, which directs the assessment of rents is interlocutory, and for any error in it, this Court should not reverse, in as much as it is not final, and is subject to correction when the final decree in re- , , . . lation to rents is made.
But as the cause will have to return to the Circuit . Court, tor the purpose of carrying into effect the assess *206 ment, and rendering a final decree thereon—we would suggest, that it is proper to make a distinct assessment of the rents of that part of the improvement which existed, at the time Taylor took possession, and to decree to the complainant the one half thereof.
For waste and deterioration of soil, the occupant is liable.
Rents should also, be assessed on that portion of the land cleared and improved by Taylor, to be lessened by ^he va}ue 0f improvements and ameliorations made by 1 „ . .. , , him, so as to sink those rents, it sufficient, it not then the half of the balance of the rents be decreed to the complainant.
But in no event should an excess for improvements, over the rents issuing out of the part improved, be charged against the complainant. Taylor should not, under his torlious holding of -the whole premises, and ouster oí the complainant, be permitted to make the complainant his debtor beyond the rents, for improvements voluntarily placed upon the' land, without his concurrence and against his will. 6 Mon. Rep. 562—3.
Taylor should also be charged with the one half of ^ e damages for any waste, or deterioration of soil caused hy his improvident, unskuliul or negligent hus-* n i v tanaiy.
Wherefore, it is decreed by the Court, that the decree of the Circuit Court be affirmed,