New-York General Term, March, 1849.   *Jones, Edmonds,*
*and Hurlbut,* Justices.

Fowler and others, Ex'rs of Ellsworth, *vs.* Poling, St. Fe-
lix and others.

If a deed conveys the possession of land, that is estate enough to carry along
with it the covenants of warranty and for quiet enjoyment.

To authorize a recovery by a grantee upon the covenants of warranty, an eviction
by legal process is not necessary.   He may surrender possession to the rightful
owner; and that will be a sufficient ouster to entitle him to his action.

A difference exists between an eviction under a covenant for quiet enjoyment, and
one under a covenant of warranty.   The former covenant relates only to the
*possession*, and the eviction is merely required to be of lawful right; while the
latter relates to the *title*, and the eviction must be not only by lawful right but
by paramount title.   *Per* Edmonds, J.

To entitle a grantee to recover for a breach of the covenants of warranty and for
quiet enjoyment, there must be an actual disturbance of the possession.

Where the covenantee is actually out of possession, either by due process of law,
or by an entry of the rightful owner, or by a surrender to one having a para-
mount title, there is an eviction; the covenant is broken; and an action will lie.

IN EQUITY.   This was an appeal, by the defendants, from a decree made by a justice of this court at a special term.   The decision appealed from is reported in 2 Barbour's Sup. Court Reports, 300, where the facts in the case are fully stated.

*Tucker & Crapo,* for the plaintiffs.

*Geo. Wood,* for the defendants.

*By the Court,* EDMONDS, J.   The claim of the defendant is presented in the answer in two aspects.   1. Either that under covenants running with the land and the agreement of Mrs. Ellsworth as set up in the answer, he is entitled to what he has paid for obtaining releases, for the costs of the partition suit, and the value of the four lots set off in that suit ; or 2. That under the covenants he is entitled to be repaid one-sixth of the consideration money expressed in Mrs. Ellsworth's deed to Bouton.

There is no doubt that the covenants of warranty, and for quiet enjoyment, enured to the benefit of the defendant; and there is nothing in the objection that no title passed, and therefore there was nothing for the covenants to run with.   The deed conveyed the possession ; and it is well settled that that is estate enough to convey the covenants along.   And although one of the deeds to the defendant was only a quit-claim, and the deed to his grantor, under the master's sale, was the same, they were enough to pass the covenants to him.   The matter was therefore correctly represented to Mrs. Ellsworth when she was told that under her deed to Bouton she was bound to make good to the defendant the defect which had been discovered in her title to a portion of the property.   If she had then barely promised to make good that defect, it is questionable whether such a promise would be binding, for it would be merely a promise to perform her covenant.   (*Miller* v. *Watson,* 5 *Cowen,* 195.)   But such was not her promise as set out in the pleadings, or as proved.   In the answer it is alledged that she authorized the defendant to take and pursue, at her cost, all such measures and proceedings as his counsel should deem necessary

and proper to perfect his title and vest in him a good and abso-
lute estate in fee simple, in severalty, in all the lands.   Such a
promise would be good.   Her liability under her covenants, and
the labor and expense which the defendant was to undertake
and incur would be a sufficient consideration to sustain it.
(*Miller* v. *Watson, supra.*)   And under that promise the de-
fendant might, perhaps, set up and be allowed the whole of his
claim.   But such was not the agreement which she made.   It
was represented to her that the heirs of Mrs. Rankin would
probably release for a small sum, much less than she would
have to pay under her covenant; and thereupon she agreed
that the defendant might procure such release on the best terms,
at her expense, and deduct the amount from the mortgage.

This promise also would be good, for the same reasons ; but
it by no means sustains the whole of the plaintiffs' claim.   It
does not sustain that part which is founded on the loss of the
four lots by the partition suit, nor the expenses of the partition
suit.   It can sustain, at most, only the amount that it cost to
obtain the releases.   So far, then, as relates to the cost of the
releases, the right to recover is founded solely on the parol agree-
ment ; and so far as the value of the four lots, and the expense
of the partition, are concerned, the right to recover rests solely on
the covenants.   And in that light I proceed to consider the claim.

In regard to the agreement, it must be borne in mind that it
had a condition attached to it, namely, that the releases should
be obtained "gratuitously or for a very small consideration,
much less than she would have to pay under her covenants."
It was not a *carte blanche* to him—not, as he seems to have
supposed both in his answer and in his conduct, authority
to expend such sum as might be necessary and proper to perfect
his title.   But it had reference to a very small sum, much less
than her liability under her covenants.   Her liability under her
covenant was $1200, yet the defendant claims, for obtaining
releases for part only, $1176,11 ; leaving to be otherwise dis-
posed of, four lots which he values at $1200, besides $623,96
for the costs of setting them off, making in the aggregate over
$3000 for perfecting his title.   The small sum which she agreed

to allow on the mortgage is thus swelled up to more than the whole amount due upon it, and instead of getting off with a sum much less than her liability on her covenants, it was equalled if not exceeded by this claim. To allow this claim would be a complete violation of the spirit of the agreement as proved, and would utterly deprive Mrs. Ellsworth of the limitation to her liability which she had provided by it, and instead of it, would substitute the agreement set up in the answer, and which is not proved. For the costs of the partition suit there is no foundation for any claim; for they are not comprehended in the parol agreement, and can form no part of the damages for a breach of the covenants of warranty or quiet enjoyment.

The claim as to the four lots rests upon different principles, and has no foundation, save in the covenants, which are not broken except by an actual eviction. An eviction by legal process is not necessary, but the grantee (or his assignee) may surrender possession to the rightful owner, and that will be a sufficient ouster to entitle him to his action on the covenant of warranty. It is true, the chancellor said, in *Hunt* v. *Amidon*, (4 *Hill*, 345,) in the court of errors, that the grantee had no right to give up voluntarily to a stranger claiming by title paramount; but his remark was obiter, and he was evidently mistaken. In *Hamilton* v. *Cutts*, (4 *Mass. Rep.* 349;) *Stone* v. *Hooker*, (9 *Cowen*, 154,) and *Greenvault* v. *Davis*, (4 *Hill*, 646,) the opposite doctrine was clearly laid down, with this restriction, that when the grantee surrenders, or suffers the possession to pass from him without a legal contest, he takes upon himself the burden of showing that the person who entered had a title paramount to that of his grantor. That burden was well sustained by the defendant in this case. He has clearly shown that the parties who entered upon these four lots had a title paramount to that of Mrs. Ellsworth. And the question is whether the circumstances of this case show such an eviction as would entitle him to recover under the covenants in respect to them; for in respect to the residue, which was released to him, he can have no pretence for recovering under the covenants, as there was no eviction of any kind, and his remedy for that part

of his claim, if he has any, must be upon the agreement alone.

The only eviction was, that the defendant, in examining the title of Mrs. Ellsworth to the premises in question, discovered a defect in it, arising out of an imperfect execution of one of the mesne conveyances by Mrs. Rankin, and disclosed it to Mrs. Ellsworth. Thereupon, at her request, he instituted proceedings to perfect the title by procuring releases, and probably thus for the first time, the heirs of Mrs. Rankin became aware of their having an interest in the lands. Unable to procure releases in all instances, the defendant himself commenced a suit in partition, in which those four lots were set off to a portion of Mrs. Rankins' heirs, and it would seem that possession of those four lots was then surrendered by the defendant to them. So that all the proceedings, from the first discovery of the defect in the title to the final surrender of these lots, seem to have been on the mere motion of the defendant, and not of the parties whose title was paramount to his, and who might perhaps, but for his proceedings, have never asserted their claim, or at least have slept upon it, until his title should have become perfect by lapse of time.

But on the other hand Mrs. Ellsworth was a party to that partition suit, and he had a right under our statute, (2 *R. S.* 312,) to take proceedings to compel the heirs of Mrs. Rankin to assert or abandon their claim. He might not have been compelled to wait until those heirs voluntarily came forward with their claim; but finding it to exist, he might have compelled its determination so as to hasten his remedy under the covenants; though it may perhaps be questioned whether he would have been so ready to disclose the defect in his title and awaken the adverse claimants to the assertion of their rights, if he had been doing it at his own expense and not at that of some other person. It is under such circumstances that the question arises whether here was such an eviction as to constitute a breach of the covenants.

Upon this point the authorities are by no means uniform. In some of the states, (*Stewart* v. *Drake in New-Jersey,* 4

*Halst.* 141,) it has been held that there must be a disturbance or deprivation or cessation of the possession by the prosecution and operation of legal measures. While in South Carolina an action may be sustained on the covenant of warranty, before eviction, by showing a paramount title. (*Biggers* v. *Bradley*, 1 *McCord*, 500.) A difference is also observable as to an eviction under the covenant for quiet enjoyment and that of warranty. The former relates only to the *possession*, and the eviction is merely required to be of lawful right, while the latter relates to the *title*, and the eviction must be not only by lawful right, but by paramount title. This may account for some of the discrepancies in the authorities, though it is not otherwise material in this case; for the deed of Mrs. Ellsworth contains both covenants, and it is enough to enable the defendant to maintain his claim, if either of them is broken. Thus, under the covenant for quiet enjoyment, it has been held that the eviction may be with or without judgment of court; (*Coble* v. *Wellborn*, 2 *Dev.* 388; contra, *Stewart* v. *Drake*, 4 *Halst.* 139;) that it is not broken by demand of possession made by one having title, (*Cowan* v. *Silliman*, 4 *Dev.* 46,) nor by a recovery against the covenantee, in trespass, by one claiming title, (*Webb* v. *Alexander*, 7 *Wend.* 281;) though contra, *Coble* v. *Wellborn, supra* ;) nor by a recovery in ejectment without actual ouster ; (*Kerr* v. *Shaw*, 13 *John.* 236; *Waldron* v. *McCarty*, 3 *Id.* 471 ; *Kortz* v. *Carpenter*, 5 *Id.* 120 ;) but that a decree in equity directing the covenantee to execute a deed and deliver possession is a breach. (4 *Dana*, 204; *Martin* v. *Martin*, 1 *Dev.* 413.) Hilliard lays down the doctrine that the covenant is broken when the adverse title is actually enforced by actual entry or acknowledgment of title to the injury of the covenantee ; and that nothing more is necessary to sustain an action than an ouster or lawful disturbance. And he instances the cases of a mortgagee's entering for breach of condition and for the purpose of a foreclosure, and of a grantee's surrendering voluntarily to one having a paramount title. (2 *Hill. on Real Property*, 382.) So he might also instance cases, common in Massachusetts, where delivery of seizin by a sheriff to a creditor in satis-

faction of an execution is held to be an eviction. (4 *Mass.* 512. 14 *Id.* 143.) So also, it has been held, that an entry by the plaintiff is not necessary; his deed giving him constructive possession is enough; and when there has been a sale at auction under a prior title, and the mortgagee became the purchaser, it was an eviction. (*St. John* v. *Palmer,* 5 *Hill,* 600.) In that case, the action was on this covenant. The premises were vacant, and were sold under a decree of foreclosure of a mortgage. The deed on the foreclosure was held of itself to transfer the possession, and thus constituted an eviction. In delivering the opinion of the court, Bronson, J. lays down the principle which governs this action, that if the covenantee never had possession, or if he had it and still retains it, no action will lie. The mere fact of a superior title in another never can amount to a breach of the covenant. His possession must be disturbed; he must be evicted; but he need not be evicted by legal process; it is enough that he has yielded possession to the rightful owner, or the premises being vacant, the rightful owner has taken possession. The test which he establishes is, whether the covenantee is still in the possession of the land. If he be, no action will lie; but if he be not, it will, the other requisites of lawful right or paramount title existing.

Under the covenant of warranty, it has been held that a final recovery in ejectment is a breach; (*Williams* v. *Wetherbee,* 1 *Aik.* 233;) that eviction in such a case is synonymous with ouster; (*Hamilton* v. *Cutts,* 4 *Mass. Rep.* 352;) and that a judgment in ejectment is not a breach. (2 *Hill,* 384. 5 *Harr. & J.* 414. 3 *Bibb,* 174. 1 *Mass.* 464. *Kerr* v. *Shaw,* 13 *John.* 136. 3 *Watts & S.* 407.)

In *Webb* v. *Alexander,* (7 *Wend.* 283,) the court say the covenantee ought not to stop short of an actual ouster, if he means to rely on his covenant, he has no right to make a compromise until an actual breach has been shown, and that a judgment in ejectment would not be sufficient, without showing the execution of a writ of possession under it. (*Contra, Hardin,* 292.) In *Whitbeck* v. *Cook,* (15 *John.* 490,) it is held that the covenant is broken only by an entry and expulsion from or some actual

Fowler *v.* Poling.

disturbance in the possession. (*S. P. Kortz* v. *Carpenter*, 5 *John.* 120. *Waldron* v. *McCarty*, 3 *Id.* 472.) Where the grantor remains in possession and sells to another, it is an eviction, and the covenant is broken. (3 *Fairf.* 499. *Martin & Yerger*, 58.)

From these conflicting authorities I deduce the true rule in this state, to be that there must be an actual disturbance of the possession ; and that where the covenantee is actually out of possession, either by due process of law, or by an entry of the rightful owner, or by a surrender to one having a paramount title, there is an eviction, the covenant is broken, and an action will lie.

In this case there was a surrender to one having a superior title, and that under due process of law in a suit to which the covenantee was a party and in which she had a full opportunity to resist and impeach the claim which was set up as paramount to hers. To that extent, there was a breach of the covenant, for which the defendant has a valid claim in this suit.

In this view of the case, the defendant would be entitled to be allowed one-forty-second part of the consideration money, with interest. The majority of the court, however, are of opinion that the parol agreement is binding, to the extent of the amount actually paid for the releases to the releasers, excluding all the costs of the partition suit, of the application to chancery for the sale of the infants' lands, and the costs and counsel fees paid to the defendant's counsel in obtaining releases.

To that extent, the decree of the special term must be mod-

                              Decree accordingly.