## RINDSKOPF *vs.* THE FARMERS' LOAN AND TRUST COMPANY.

The general covenant, to warrant and defend premises conveyed, against all lawful claims, includes the covenant for quiet enjoyment; and the true meaning of it is that the grantee and his heirs and assigns shall not be deprived of possession by force of a paramount title. It runs with the land, and passes with the fee to any subsequent grantee of the same title.

Such a covenant, it is well settled in this State, is only broken by actual eviction from the premises. Where there has never been any possession under or through the deed containing the covenant, there can be no actual eviction.

Where, at the date of a deed, the premises granted are in the possession of other persons claiming adversely to the grantee and his grantor; and such persons, and others claiming under them, are permitted by the grantee and those deriving title from or through him, to remain undisturbed until their adverse possession ripens into a good title, as against the grantee, the latter, or one claiming under him, cannot be allowed to recover upon the covenant of warranty, for a failure of title by such means; they not having lost their land by a title paramount, existing at the time of executing the covenant, but by their own laches, in suffering an imperfect and inferior claim of title to become a legal title paramount to theirs.

APPEAL by the plaintiff from a judgment entered upon the report of a referee, dismissing the complaint, with costs. The action was brought to recover damages for breach of a covenant of warranty contained in a deed.

Rindskopf *v.* Farmers' Loan and Trust Company.

The referee found the following facts: On the 7th day of May, in the year 1852, the defendant, a New York corporation, and successor to the Holland Land Company, by deed granted and conveyed to one Horace Frizelle, lot 20 in the eighth township and fifth range of townships, of the tract known as the Holland Land Company's land, together with divers other lots and parcels of land, the said lot being situated in the county of Erie and State of New York, for the consideration of $13,230, which said conveyance was in fee, and contained the covenant on the part of the grantor which is set forth in the complaint in this action. The deed contained the following covenant on the part of the grantors: "And the said party of the first part, for themselves and their successors, do hereby covenant, promise, and agree to and with the said party of the second part, his heirs and assigns, that they, the said party of the first part, the above described, and hereby granted and bargained premises and every part thereof, with the appurtenances, unto the said party of the second part, his heirs and assigns, against the said party of the first part, and their successors, and against all other persons, whatsoever, lawfully claiming, or to claim, the same or any part thereof, shall and will warrant, and by these presents defend." The defendant was not, at the time of the said conveyance, in the actual possession of the premises thus conveyed, or any part thereof, but the same was at that time in the actual possession of other parties, parcels thereof being in the possession of different parties, each of such possessors claiming to own the parcel so possessed by him, in hostility to the title of the said defendant, and under color and claim of title in himself. That the undivided one half the title to said lot 20, so conveyed to said Horace Frizelle, together with the covenant of warranty aforesaid, except as against said adverse possessors, by the operation of sundry mesne conveyances, became vested in the plaintiff in May, 1861. Neither the

said Horace Frizelle, the grantee of the defendant, or any one claiming under him, ever entered into possession of the said lot No. 20, or any part thereof. That in September, in the year 1867, an action, commonly called an action of ejectment, was commenced against each of the occupants of said lot No. 20, to recover the possession of the undivided one half, that portion of the premises held by him, making six actions in all, which actions were commenced and prosecuted in the name of the Farmers' Loan and Trust Company as plaintiffs, and the complainants therein alleged title in it on the 1st of June, 1852; all of which six actions were tried at the circuit court held in Erie county in June, 1868. In each of said actions the title of the Farmers' Loan and Trust Company was given in evidence, and in each of said actions the defendant recovered judgment, upon the ground that he and those under whom he claimed had held the possession of that portion of said lot described in the complaint, in the action against him, adversely to the title of the Farmers' Loan and Trust Company, its predecessors and successors, for more than twenty years next prior to the commencement of the said action. And in the said six actions, title by adverse possession as against the Farmers' Loan and Trust Company, its predecessors and successors, was established as to the whole of said lot No. 20. The said six actions were commenced, in fact, by the plaintiff in this action, for his own benefit, and for the purpose of recovering possession of the said undivided half of said lot No. 20, claimed by him under the said grant to Horace Frizelle, and the subsequent conveyances, and notice was given by the plaintiff in this action, to the defendant in this action, of the commencement of the said six actions of ejectment, and of the object thereof; and the said defendant in this action was required, by the plaintiff in this action, to maintain the title of the said Farmers' Loan and Trust Company to said lot No. 20, as conveyed to

said Horace Frizelle, in the said six actions of ejectment; and the defendant in this action, by its attorney and counsel, appeared and took part in the trial of said six actions of ejectment.

On the trial of this action, evidence was given on the part of the plaintiff, tending to show that some parts of the said lot No. 20 had been held adversely by the predecessors of the defendants in the six actions of ejectment, for more than twenty years prior to the date of the deed from the Farmers' Loan and Trust Company to Horace Frizelle. It did not appear that any attempt had ever been made to recover possession of said lot 20, or any part thereof, by any person claiming under the same title conveyed by the Farmers' Loan and Trust Company to Horace Frizelle, until the commencement of the said six actions of ejectment, in September, 1867.

As a conclusion of law upon the foregoing facts, the referee determined that the plaintiff was not entitled to maintain this action against the defendant, for the reason that the said plaintiff had not been evicted from the possession of the said lot No. 20, or any part thereof; and he directed judgment for the defendant, with costs.

The only questions before the court were these:

1st. Granting that this covenant is a covenant for quiet possession, can a recovery be had for a breach of it without actual possession of the warranted premises; or is a constructive possession, arising upon a delivery of the granted premises, recognized in this State, and sufficient to maintain the action in cases where the grantor's title is manifestly bad, and the covenantee is unable to get possession. 2d. Is the covenant in question in fact a covenant for quiet possession, or a covenant warranting and guaranteeing the ownership of the granted premises—the soil—to the grantee, and therefore not falling within the rules heretofore applied in this State to strict covenants for quiet enjoyment.

*F. G. Salmon,* for the appellant.

I. Since the abolition of livery of seisin and the statute of uses in this State, the execution and delivery of a conveyance of premises passes the possession of them from grantor to grantee, as against the grantor and all in privity with him, and the grantor is estopped by his deed from denying the grantee's possession. 1. Formerly no conveyance of land without livery of seisin gave any title to the land attempted to be conveyed. 2. The covenant of warranty being annexed to the land, and no land passing, even as between grantor and grantee, no action could be maintained on the covenant until the grantee had obtained actual possession. 3. When the statute of uses went into operation, livery of seisin in certain modes of conveyance became unnecessary, because the statute passed the possession, and the bargainor or releasor was, by his deed, estopped from denying the releasee's or bargainee's possession. It was well settled that no actual entry need be proven. 4. An investigation of early English cases shows that since the passage of the statute of uses in England, an actual entry is not necessary to maintain an action on a covenant for quiet enjoyment. Constructive possession and eviction are recognized. (*Clarke* v. *Hooper, Freeman,* 122. *Ludwell* v. *Newman,* 6 *T. R.* 458. *Hawkes* v. *Orton,* 5 *Ad. & El.* 367.) In the first of the above cases the warranted premises had been previously conveyed by the king, to whom they rightfully belonged. A demurrer on the ground that the plaintiff did not allege any entry, was overruled. The court say, "having shown a title in the patentee of the king, which is admitted, the plaintiff shall not be forced to enter," &c. In *Ludwell* v. *Newman,* the court say, "defendants covenant for quiet enjoyment means a legal entry and enjoyment without the permission of any other person, which could not have taken place here on account of the prior lease granted," and judgment was given for the plaintiff. And in *Hawkes* v. *Orton,* the court

say, "that a refusal to give possession would, if properly pleaded, be a breach of a covenant for quiet enjoyment." (*See Rawle on Covenants*, 255.)

II. The courts of this State recognize the doctrine of constructive possession, and that the execution and delivery of a deed of premises vests the possession of the granted premises in the grantee, as against the grantor and those in privity with him. 1. Livery of seisin, or actual possession, is not necessary. (3 *R. S. p.* 29, § 156, *5th ed.*) 2. The execution and delivery of a conveyance of premises draws the possession of the granted premises after it, when they are vacant. (*Van Brunt* v. *Schenck*, 11 *John.* 385. *Proprietors of Kennebeck* v. *Call*, 1 *Mass.* 484. *Mathew* v. *Trinity Church*, 3 *Serg. & R.* 514.) 3. Such execution and delivery has the same effect as to occupied premises as between the grantor and grantee, for it is a valid and good conveyance, and operative to all intents and purposes, except as against adverse possessors occupying adversely under a title. (*Jackson* v. *Demont*, 9 *John.* 55. *Kenada* v. *Gardner*, 3 *Barb.* 589. *Poor* v. *Horton*, 15 *id.* 485. *Howard* v. *Howard*, 17 *id.* 663.) 4. The adverse occupant under a title can alone avail himself of the objection that the grantor was not in possession at the time of the conveyance; the objection is not open to the grantor, and the lack of possession being the foundation of the objection, the grantor cannot set up lack of possession as between himself and the grantee. (*Poor* v. *Horton, and other cases, cited supra.*) 5. The adverse occupant must claim under a specific title; nothing less will prevent the possession of the granted premises vesting in the grantee, even as against him, or deprive him of his right to maintain ejectment. (*Fish* v. *Fish*, 39 *Barb.* 513. *Crary* v. *Goodman*, 22 *N. Y.* 170. *Holdred* v. *Styles, decided in Court of Appeals in* 1862, *not reported; referred to in Newton* v. *McLean*, 41 *Barb.* 289.) 6. The action of ejectment is a possessory action, and cannot be maintained except upon the theory

that the plaintiff has had a possession which has been disturbed, for when the deed is void, as against the adverse occupant claiming under a title, the grantee must count upon the possession of his remote grantor, who was possessed. (*Poor* v. *Horton, and cases cited under subd.* 3, *supra.*)
7. If, at the time of the delivery of the deed to the grantee, the adverse claimant *was* in the actual possession, though not under a title, then it follows that the grantee (plaintiff in ejectment) *was not* in the actual possession, and he is allowed to maintain his action of ejectment upon the theory of a *constructive* possession in him, which the law recognizes, and how could he have obtained that by the mere delivery of the deed of the granted premises, which is a symbolical delivery of possession to him by his grantor?
8. The deed, which vests the constructive possession of the granted premises in the grantee, has the same operation as respects the covenantee, where the same party is made grantee and covenantee by the same instrument. If the grantee can maintain ejectment, he can also maintain covenant, for the foundation of both actions is the same, to wit, possession and a breach of it.   9. Can it be reasonably contended that a grantee of premises adversely occupied, is both in possession and not in possession, for the purposes of two actions, the right to maintain which rests on one and the same foundation.   The proposition is so absurd that it has been rejected in every State of the Union, except New York and Virginia.

III. The recognition of a constructive possession, necessarily involves the recognition of its breach, or the doctrine of constructive eviction.   The recognition of constructive possession has caused constructive eviction to be recognized in the following countries and States: Great Britain: *Clarke* v. *Hooper, Ludwell* v. *Newman, Hawkes* v. *Orton*, (*supra.*)   Maine: *Curtis* v. *Deering*, (12 *Maine*, 501.) Vermont: *Phelps* v. *Sawyer*, (1 *Atk.* 158;) *Park* v. *Bates*, (12 *Verm.* 381;) *University of Vermont* v. *Joslyn*, (21 *id.* 52.)

Rindskopf v. Farmers' Loan and Trust Company.

New Hampshire: *Loomis* v. *Bedel*, (11 *N. Hamp.* 74.) New Jersey: *Miller* v. *Halsey*, (2 *Green*, 49.) Tennessee: *Randolph* v. *Meeks*, (*Mart. & Yerg.* 58.) Alabama: *Caldwell* v. *Kirkpatrick*, (6 *Ala.* 60;) *Banks* v. *Whitehead*, (7 *id.* 83.) •Mississippi: *Dumas* v. *Heath*, (11 *Sands & M.*, 206;) *Witty* v. *Hightown*, (12 *id.* 473.) Kentucky: *Camman* v. *Kenedy*, (3 *Littell*, 123;) *Barnet* v. *Montgomery*, (6 *Monroe*, 628.) Illinois: *Moor* v. *Vail*, (17 *Ill.* 185.) North Carolina: *Grist* v. *Hodges*, (3 *Devereux*, 203.)

IV. Of breach of covenants there are two kinds—actual and constructive. Of actual, there are three kinds: 1. When the actual dispossession is by process of law consequent upon a judgment or decree. 2. Where the actual dispossession is caused by the exercise of the common law right of entry. 3. Where the possession is voluntarily and actually abandoned and surrendered to the adverse title. Of constructive eviction there are four different kinds: 1. Where the covenantee has never had possession, never having been able to obtain it by reason of the adverse title. 2. Where, after the paramount title has been established, he accepts a lease or other conveyance under it, remaining in possession. 3. Where the covenantee does this, though the adverse title has not been established, thus taking on himself, in his action on the covenant, the establishing of the adverse title. 4. When the eviction is not of the land, but of something incidental to its enjoyment. (*Rawle on Covenants*, 251, *and cases cited*.)

V. Actual damages are recoverable, and awarded, for purely constructive breaches of covenants for quiet possession. Though the breach be purely constructive, yet the grantee actually loses the warranted premises for which a consideration has been paid; the damage he suffers—his loss—is actual, and demands actual compensation as its remedy. (*See all cases cited under third point*.)

VI. The judgments in the six actions of ejectment constitute a constructive eviction from the warranted prem-

ises, and a disturbance of the warrantee's possession. Where the grantee has not been able to get possession, and has failed in his action to recover it, the judgment in that action constitutes an eviction in all cases in which constructive possession is recognized. (*Rawle on Cov.* 251, *and cases cited under third point.*)

VII. The breach of the covenant took place upon the rendition of judgments in the actions of ejectment, and no sooner. 1. The finding of the referee that the plaintiff is the owner of the covenant, &c., is conclusive on this point, because, had the breach occurred sooner, the covenant would have been severed from the land, and not have passed by the mesne conveyances as conveyances of the land only. 2. There can be no breach until the covenantee has either been evicted or established the adverse title. In cases in which actual possession has been had, the breach dates, of course, as of the time of actual dispossession. In cases of constructive possession, the eviction is of the date when the grantor's title is adjudged bad, or the warrantee attorns to the adverse title. 3. Until that time the covenantee is in possession as against his covenantor, and it is the rendition of the judgments adjudging the covenantor's title bad that determines his possession, even as between them. 4. That this is so, is proven by the fact that the covenantee can bring suit on the covenant, and take on himself the burden of establishing the adverse title in that suit; the judgment therein operating, first, to establish the eviction of the covenantee, (which thus does not take place until the covenantor's title is adjudged bad;) and, second, to give damages for the eviction. 5. The proposition contended for accords with the old English common law on the subject, to wit, when the covenantee's title was called in question, he could, by a writ of *warrantia chartœ*, call in and make his warrantor a party to the action; and the same judgment which declared the warrantor's title worthless, set apart other land

of his to the warranty as compensation for those lost. (*Rawle on Cov.* 205.)

VIII. Admitting, for argument's sake, that the covenant was broken upon the delivery of the deed from the company to Frizelle, and that the mesne conveyances are inoperative, even as between grantor and grantee, to pass either the land or the covenant, still those conveyances are equitable assignments of the claim for damages for the breach of the covenant. 1. If the deed from Frizelle to Israel Smith passed neither land nor covenant, then, in equity, it should pass to the grantee the only right or remedy growing out of the entire transaction which the grantor had. 2. It has been held in this State, that a deed given under a void statutory foreclosure, and which, therefore, passed nothing in the land to the purchaser, operated as an assignment of the mortgage to the extent of the purchase money paid—which is exactly analogous to the proposition contended for. (*Grosvenor* v. *Day, Clarke,* 109. *Jackson* v. *Bowen,* 7 *Cowen,* 14.)

IX. This claim—chose in action—passes by assignment. 1. The assignability of things in action is now the rule, their non-assignability the exception. (*Butler* v. *N. Y. and Erie Railroad Co.,* 22 *Barb.* 110.) 2. All claims which survive to the representatives of the party are assignable; this is the test of their assignability. (*Robinson* v. *Weeks,* 6 *How. Pr.* 161. *Hoyt* v. *Thompson,* 5 *N. Y.* 320, *opinion per Paige, J.,* 347. *Meech* v. *Stoner,* 19 *N. Y.* 26.) 3. It is of no importance whether the assignment passes the legal title or not. Whether the assignee's title be legal or equitable, if he have the whole interest he can maintain an action in his own name. (*Hastings* v. *McKinley,* 1 *E. D. Smith,* 273; *affirmed Seld. Notes, n.* 4, 19.)

X. The plaintiff is not barred by the statute of limitations, from asserting this claim for damages, which at the commencement of this action was 19 years old. 1. This action is upon a clause contained in a sealed instrument.

(*Code,* § 90.)   2. The statute of limitations has not been specially pleaded in bar, which renders the defense unavailable.

XI. The title of the adverse claimants is good as to the whole of the granted premises, and that title did not ripen subsequent to the time of the delivery of the deed from the company to Frizelle.   1. The judgment in the six actions of ejectment establish the adverse title as to the whole of the premises as far back as the dates found by the justice upon the trial of the ejectment suits, to wit: 1841, 1843, 1842, 1837, and so far the records estop the defendant.   2. The adverse title being once established to be good, the presumption at once attaches that it always was good, and that of the warrantor always bad; and this presumption runs back indefinitely.   The burden, then, of showing that the covenantee lost the premises by his own laches rests on the warrantor.   3. The presumption that the company's title was always bad, is strengthened by the plaintiff's testimony given for himself, showing the adverse occupation of the premises as early as 1816, 1820, 1821.   4. The records in the ejectment suits are no evidence that the adverse possession commenced at the times mentioned in the judge's findings therein.   The findings merely say that at a certain time a certain person was in the occupation of said premises, claiming to own them, &c.; but they do not say he was the first occupant.   On the contrary, some of those persons mentioned went in under deeds; which fact proves a prior occupancy.   5. The cross-examination of the plaintiff's witnesses neither destroys the presumption raised by the records, nor contradicts the evidence given on direct examination; because adverse possession of land under claim not written, is of two kinds: 1st. When it has been protected by a substantial inclosure.   2d. Where it has been usually cultivated and improved.   (*Code,* § 85.)   The cross-examination merely proves that a part of the prem-

ises were not inclosed. The witness, on cross-examination, says that "it (the whole tract) was farmed." So that the testimony given on direct-examination, that the *premises, i. e.,* the whole premises, were *cultivated,* is in no degree shaken. 6. The presumption of an adverse possession running back indefinitely, raised by the record, rests on a two-fold basis—inclosure and cultivation ; and even if the first be destroyed by the cross-examination, the latter still remains unshaken. 7. The cross-examination is too indefinite to prove anything. The presumption of adverse possession covers and attaches to each and every year, hour and minute in its backward passage; and in order to shake that presumption, it was necessary to prove, clearly, that at some time subsequent to 1832 the lands, or some portion of them, were both uncultivated and uninclosed. 8. There is no such proof.

XII. The covenant is not a covenant for quiet enjoyment, merely. It is a covenant warranting the ownership of the premises to the grantee. 1. The word *possession* is not to be found in the covenant. 2. The defense of the premises—the soil itself—and not the *possession* of them, is warranted. 3. This covenant is a real covenant; is annexed to and passes with the lands, and everything that causes a loss of the soil is a breach of it. 4. No reason exists for extending the harsh and injurious rule applicable to strict covenants for quiet possession, to covenants which do not strictly refer to possession only. It is the duty of courts to exercise their ingenuity in excepting cases from the operation of the rule on very slight distinctions; even as the English courts did to avoid the harsh and unjust restrictions upon the alienation of land.

XIII. An appellate court should consider the principles applicable to a recovery on strict covenants for quiet enjoyment, *de novo.* 1. A long period has elapsed since any authoritative decision on the point. 2. In all the cases

decided since 1831, the change marked in the law by the abolition of livery of seisin, and the statute, seems never to have been taken into consideration.   3. The latest decisions concerning the effect of a delivery of a deed are inconsistent with the former decisions, to the effect that constructive possession is not recognized in this State. 4. The right of the court so to do is undoubted.  (*Ram on Legal Judgment, ch.* 14, § 1, *p.* 112 ; § 3, *pp.* 121–123 ; § 4, *pp.* 125, 126, 161.  *Sugden on Laws of Judgment in House of Lords, p.* 21, §§ 18 *to* 26.  *Miller* v. *Emans,* 19 *N. Y.* 384, *overruling Pelletreau* v. *Jackson,* 11 *Wend.* 110, *and Edwards* v. *Varick, both in court of errors, decided by a vote of* 15 *to* 1.)

XIV. No uncertainty, hardship or injury can result from a repudiation of the doctrine that actual possession must be had in order to recover upon a covenant for quiet possession.   1. If the courts distinctly recognize that constructive possession is a part of the law of this State, and distinctly overrule all cases to the contrary, there can be no less certainty in the law than now.  2. The only parties affected by the change would be those who would become liable to refund moneys they have received without giving anything in return ; a class of persons certainly not entitled to much consideration at the hands of courts of law and equity.  3. The change would relieve many who have suffered injury, and are without redress.

*John Ganson,* for the repondent.

The covenant, contained in the deed of the defendant to Horace Frizelle, was, in effect, for the quiet enjoyment of the premises therein described.  The covenant is to warrant and defend the premises, which means the possession of the premises.  (*Ingersoll* v. *Hall,* 30 *Barb.* 392.  *Van Slyck* v. *Kimball,* 8 *John.* 198.)

II. The plaintiff, in order to maintain an action for the breach of the covenant for quiet enjoyment, must show

that he has had possession of the premises, and has since been evicted therefrom. (*Waldron* v. *McCarty*, 3 *John.* 471. *Kortz* v. *Carpenter*, 5 *id.* 120. *Kerr* v. *Shaw*, 13 *id.* 236, *Van Slyck* v. *Kimball*, 8 *id.* 198. *Miller* v *Watson*, 5 *Cowen*, 195. *Hunt* v. *Amidon*, 4 *Hill*, 345. *Whitbeck* v. *Cook*, 15 *John.* 483. *Fowler* v. *Poling*, 6 *Barb.* 165. *Kelly* v. *Dutch Church*, 2 *Hill*, 105.)

III. If the adverse possession, at the time the covenant was made, was an eviction, or operated as a breach of the covenant in question, then the right of action accrued at once, and did not pass by the subsequent conveyance to the plaintiff. The moment the covenant was broken, it ceased to run with the land. The right of action having arisen, being a mere chose in action, would not pass to a grantee of the land.

IV. The plaintiff, on the evidence in this action, could not recover in any event. The adverse possession had not ripened into a title in 1852, when the defendant entered into its covenant. If the actions to recover the possession of the premises had then been commenced, they would have been successful. The rights of the parties must be determined as they were when the covenant was made. The plaintiff cannot ask any benefit from a claim which, by his laches, or the laches of his grantors, has been suffered to ripen into adverse possession. (*Ireland* v. *Bircham*, 29 *Eng. Com. L.* 266.)

*By the Court,* JOHNSON, J. The covenant on which this action was brought is the general covenant, to warrant and defend the premises conveyed, against all lawful claims. This covenant, as had been repeatedly held, includes the covenant for quiet enjoyment, and the true meaning of it is, that the grantee and his heirs and assigns shall not be deprived of possession by force of a paramount title. It

runs with the land, and passes with the fee to any subsequent grantee of the same title.

Whatever may be the rule elsewhere, it is certainly well settled in this State, by a long and uniform course of adjudication, that such a covenant is only broken by an actual eviction from the premises. The rule as laid down by *Kent*, in his *Commentaries*, on this question, has always been followed in this State, and is too well settled to be changed or disturbed, at this day, even were a change desirable, which I think it is not. (4 *Kent's Com.* 471. *Waldron* v. *McCarty*, 3 *John.* 471. *Kortz* v. *Carpenter*, 5 *id.* 120. *Kent* v. *Welch*, 7 *id.* 258. *Vanderkarr* v. *Vanderkarr*, 11 *id.* 122. *Kerr* v. *Shaw*, 13 *id.* 236. *Whitbeck* v. *Cook*, 15 *id.* 483. *Rickert* v. *Snyder*, 9 *Wend.* 416. *Beddoe* v. *Wadsworth*, 21 *id.* 120. *Fowler* v. *Poling*, 6 *Barb.* 165. *Bank of Utica* v. *Mersereau*, 3 *Barb. Ch.* 528. *Ingersoll* v. *Hall*, 30 *Barb.* 392.)

The plaintiff here has never been evicted, as he was never in possession. No one ever went into possession under or through the grant to Frizelle; consequently actual eviction from the premises, as derived from that grant, was impossible. Without possession there can be no actual eviction. At the time of the grant to Frizelle, the premises were in possession of other persons claiming adversely to him and to the defendant, his grantor. Those persons, and others claiming under them, were permitted by Frizelle and those deriving title from or through him, to remain undisturbed until their adverse possession ripened into a good title as against Frizelle. The plaintiff and others, claiming under or through Frizelle, have not lost their land by a title paramount, existing at the time the covenant in question was made by the defendant, but by their own laches in suffering an imperfect and inferior claim of title to become a legal title paramount to theirs. In any view the plaintiff could not be allowed to recover for a failure of title by such means.

The judgment of the special term must therefore be affirmed.

Justice TALCOTT, who tried the action as referee, did not sit in the case.

