## Funk *v.* Creswell *et ux.*

The covenant against incumbrances in a deed of real estate, binds the grantor to make good his warranty of title; and he is held by it, to pay a sum of money which will put the grantee in as good a state, as if the grantor had kept his covenant.

If the grantee extinguishes the incumbrance on the land, he may recover of the grantor, the amount so paid. If not extinguished, he can recover nominal damages only.

For such incumbrances as the grantee cannot remove, he may recover of the grantor, a just compensation for the real injury resulting from the incumbrance.

Where the grantee is permanently kept out of the estate, by reason of the incumbrance, he may recover back his purchase money and interest.

Where there is a special covenant in the deed against incumbrances, the grantee is not required to wait until he is evicted, before he can have an adequate remedy against his grantor. The grantee may extinguish the incumbrance, and call upon the grantor for indemnity.

In an action for the breach of a covenant against incumbrances, it is not necessary to allege an actual ouster or eviction, but only that the incumbrance is a good and subsisting one.

The covenant of general warranty, in the form in which it is given in section 1232 of the Code, includes a covenant against liens and incumbrances outstanding at the time of the conveyance.

The covenants are not to be so construed as to enlarge the estate granted in the premises of the deed; but when a question arises as to the quantity and quality of the estate granted, they may be resorted to, to help out the construction. And if there is any ambiguity, the construction is to be most strongly against the grantor.

Where a party conveys all his right, title and interest in the lands described in the deed, and covenants to warrant and defend the premises against all lawful claims arising under him, the covenant refers to the lands described, and not to the right and title of the grantor.

The covenant of general warranty, is a warranty of not merely such title as the grantor has in the land, but of the title in fee simple.

The term "general warranty" is used in contradistinction to "special warranty." Warranty and general warranty, are the same in meaning.

Where a party makes a conveyance after the form termed by the Code, "a deed in fee, with warranty," there is implied in the covenant therein given, every other covenant necessary to insure a perfect title to the grantee, as well as indemnity for its failure.

It is sufficient to constitute a breach of the covenant against incumbrances, that the incumbrance exists, whether asserted or not.

Where an incumbrance exists, the covenant against incumbrances is broken as soon as made; and the vendee's right of action is not affected by the purchase of the paramount claim—such purchase merely affecting the question of damages.

*Appeal from the Des Moines District Court.*

FRIDAY, JUNE 26.

Suit before a Justice of the Peace, on the covenant of warranty, in a deed of conveyance from defendants to plaintiff, to recover the sum of twenty-two dollars and five cents, for taxes, alleged to have been incumbrances upon the property at the time it was conveyed, and which, defendants refusing to pay, had been paid by plaintiff. On the trial before the justice, a demurrer to the petition was overruled; and the facts alleged, being admitted to be true, judgment was rendered in favor of the plaintiff, for the amount paid by him to free the property from the incumbrance. On error to the District Court, the judgment of the justice was reversed, and judgment rendered on the demurrer in favor of defendants. The plaintiff appeals.

*Browning & Tracy*, for the appellant.

*Starr & Phelps*, for the appellees.

STOCKTON, J.—The deed from the defendants to the plaintiff, contains no express covenant that the premises are free from incumbrances; and the cause has been argued by the counsel on both sides, as though the conveyance was in the form given by the Code, (section 1232,) by which the grantor conveys the premises to the grantee, and covenants to "warrant the title against all persons whomsoever." It is as to the meaning and effect of this covenant, that we are now to inquire, and to decide whether it includes a covenant that the premises are free and clear of incumbrances, at the date of the deed.

The modern covenants for title, which have usurped the place of the common law *warrantia chartæ*, are: 1. Seisin; 2. Right to convey; 3. Freedom from incumbrances; 4.

For quiet enjoyment; and 5. To warrant and defend the title against all lawful claims. Each of these covenants has its proper office, meaning and effect, into the consideration of which it is not, perhaps, necessary for us, at this time, to enter. Of the covenant against incumbrances, we may, however, say, that it is understood to bind the grantor to make good his warranty; and he is held by it to pay a sum of money which will put the plaintiff in as good a state as if he had kept his covenant. *Thayer* v. *Clemence*, 22 Pickering, 490. If the grantee extinguishes the incumbrance, he may recover the amount so paid. If not extinguished, he can recover nominal damages, only. *Delaverque* v. *Norris*, 7 Johns. 358; *Deforest* v. *Leete*, 16 Ib., 122; *Leffingwell* v. *Elliott*, 10 Pick., 204. For such incumbrances as the grantee cannot remove, he may recover a just compensation, for the real injury resulting from the incumbrance. *Batchelder* v. *Sturgis*, 3 Cushing, 205. If the grantee is permanently kept out of the estate, by reason of the incumbrance, he may recover back his purchase money, and interest. *Chapel* v. *Bull*, 17 Mass., 213. Where there is a special covenant in the deed against incumbrances, the grantor is not required to wait until he is evicted, before he can have an adequate remedy against his grantor. He may extinguish the incumbrance, and call upon the grantor for indemnity. So, it is not necessary to allege an actual ouster or eviction, as the breach of a covenant against incumbrances, but only that the incumbrance is a good and subsisting one. *Prescott* v. *Truman*, 4 Mass., 629.

In the case of *Funk* v. *Voneida.*, 11 S. & R., 109, it was held that where, under the law of Pennsylvania, the words "*grant, bargain, and sell*," were a covenant against incumbrances done or suffered by the grantor, a mortgage upon the premises, at the time of the conveyance, was a subsisting incumbrance, and the covenant was broken without an eviction; that, when the mortgage money was not due, but the grantee chooses to pay it, he should be allowed, as damages, the fair price it necessarily cost him;

and that it would be a most inconvenient doctrine to hold, that the vendee must wait ten years, until the last instalment became due, when his grantor might be a beggar. The breach of the covenant, was the existence of the incumbrance. It did not require an eviction to constitute the breach. Eviction was but the consequence of the breach. The Court held, in the same case, that if the grantor had notice to remove the incumbrance, and refused, equity would compel him to raise it, and decree a general performance of the covenant of indemnity, though it sounds only in damages. See also 4, Kent's Com., 476.

The question in this case is, whether the covenant of general warranty, in the form in which it is given in the Code, section 1232, includes a covenant against liens or incumbrances, outstanding at the time of the conveyance. We are of opinion that it does.

The covenant of warranty, by an innovation upon the common law, has been converted into a personal covenant, and furnishes a remedy, as well against a defective title, as any disturbances thereupon. It is not used in conveyances in England, where the covenant for quiet enjoyment is the sweeping covenant in the deed, and the main assurance of title. In the United States, the covenant that the grantor will "warrant and defend the title," is, (says Chancellor Kent), the concluding and sweeping covenant in a deed, 4 Kent's Com., 472. This covenant is, in general, only broken by actual ouster, or eviction. As an eviction is, however, equally a breach of the other covenants of a deed, the covenant of general warranty, may, in a certain sense, be said to embrace them all. Technically, an eviction, is a lawful disturbance of possession, or dispossession by judgment of law. 2 Hiliard Real Prop'y, 404. Eviction by judgment of law, is not, however, necessary. The party may voluntarily yield the possession to him who has the better title, or may purchase and hold under it. This is a sufficient ouster or disturbance, to sustain an action on the warranty. *Loomis* v. *Bedell*, 11 N. H. 74; *Greenvault* v. *Davis*, 4 Hill, 643,

*Stone* v. *Hooker* 9 Cowen, 154; *Fowler* v. *Powling*, 6 Barb. 165. So a judgment in ejectment, is a sufficient breach of the covenant of warranty, without actual eviction. 5 Ohio, 158; 1 Aiken, 233. It is also held that the covenant of general warranty, covers an eviction by title, derived by sale under a judgment against the grantor, existing at the time of the conveyance. *Smith* v. *McCampbell*, 1 Black. 100. So if a party make a mortgage, and afterwards convey the land to a purchaser, without notice, this is an eviction, though the mortgagee had never been in actual possession. 3 Fairfield, 499. The covenant of general warranty, is a covenant against eviction by reason of any incumbrances outstanding. In *Thayer* v. *Clemence*, 22 Pick., 493, it was held, that although the special covenant in the deed against incumbrances, did not run with the land, and could not be sued by the assignee; yet the covenant to "warrant and defend," was *in futuro*, running with the land; and whenever the assignee of the land was evicted by title paramount, he had his remedy against the covenantor.

What interest in the property conveyed, passed to the grantee by the deed of the defendants? Was it only the interest that the grantors had at the time, without reference to liens or incumbrances outstanding? or was it the fee simple estate, indefeasible by any act done or suffered by the grantors? The covenants are not to be so construed, as to enlarge the estate granted in the premises of the deed; but when a question arises as to the quantity and quality of the estate granted, they may be resorted to, to help out the construction. If there is ambiguity, the construction is to be most strongly against the grantor. Where a party conveys all his right, title and interest in the lands described in the deed, and covenants to warrant and defend the premises against all lawful claims arising under him, the covenant refers to the lands described, and not to the right and title of the grantor. *Loomis* v. *Bedel*, 11 N. H. 74. So, where the party conveyed all the right and title to the lands described, which he owned by virtue of

a certain deed to him, and covenanted that he was "seized of the premises in fee simple; that he had good right to sell the same; that they were free from all incumbrances; and that he would warrant and defend them against the lawful claims of all persons," it was held that the thing granted was the land itself, and not simply such title to it as the grantor had at the time, and that he was liable for any breach of the covenants. *Mills* v. *Catlin*, 22 Vermont, 104.

The covenant of general warranty, is a warranty of not merely such title as the grantor has in the land, but of the title in fee simple. By the deed in this case, not the interest merely of the grantors passed to the grantee, but by their covenants they agree to warrant the title against all persons whomsoever. If the plaintiff had suffered the premises to be sold for taxes; if the purchaser had perfected his title under the tax sale, and the plaintiff had yielded the possession to the claimant under it, there can be no doubt but that the covenant of warranty would have been broken, even according to the narrowest construction sought to be given to it by the defendants. The lien of the taxes was of such a nature, that it might have ripened into a title paramount to that acquired by the plaintiff, under his deed. It is not claimed that the taxes on the property, paid by the plaintiff, were not a valid incumbrance and lien. See Code, section 495.

Must the grantee, then, whatever may be the incumbrance—whether a tax, judgment or mortgage—wait until a perfect title has matured, and until he is disturbed or ousted of his possession, before the covenant is to be deemed broken, and before the grantor can be required to afford him any adequate indemnity? We cannot think that such is the rule. It is not for the interest of either party, that such should be the law. If there is a valid incumbrance upon the estate, it is for the interest of both parties that it should be extinguished immediately. The important inquiry is, who shall discharge it? Can it be insisted that the grantor in making, or the grantee in receiving, the

deed, with the covenant of warranty, did not suppose that it covered all outstanding liens and incumbrances at the date of the deed ?—that the words were understood by the parties, only in the sense of warranty against eviction, or disturbance by reason of failure of title ?   It would not be difficult to maintain the proposition, that by the words,— "I warrant the title against all persons,"—is understood, a covenant warranting, not less against all manner of defects of title, than against all incumbrances existing at the date of the deed.   If such is not the construction to be placed upon the covenant given in the Code, (section 1232,) then the profession, as well as the community generally, have been grievously deceived.

There has been an evident disposition to encourage and promote greater simplicity in the forms of conveyances, not less in modern legislation, than in the later judicial decisions.   In England, a system has grown into favor unknown to the common law.   In the United States, the covenant for further assurance, in favor in England, has gone into disuse, while the covenant of general warranty, unknown to English conveyancing, may be said to have been universally adopted, as the main assurance of a perfect title. The legislature has provided in the Code, (section 1232,) suitable forms for conveyances, in apt words—short, simple and intelligible—free from the verbiage and formalities of the old system; but retaining all that was valuable or essential, in meaning or substance.   From these, the form " for a deed in fee, with warranty, " has been adopted by the present parties, with the covenant of warranty in the language of the statute.   The form is not prescribed to be used by those who do not choose or prefer it; nor having adopted it, are parties precluded from inserting other covenant of warranty; or from restraining, in express terms, those adopted, as they may desire.   All that is claimed for it is, that it shall have the very effect and meaning designed and understood by the parties, and contemplated by the legislature, viz: to include and imply all the usual covenants in a deed of conveyance in fee simple.

As early as the year 1840, (Laws of 1840, 35,) the legislature of the territory of Iowa, provided by law, that in all conveyances in which any estate of inheritance in fee simple was limited, the words, "*grant, bargain and sell*" should, unless restrained by express words in the conveyance, be construed to be the following express covenants on the part of the grantor and his heirs, to the grantee and his heirs and assigns:

1. That the grantor at the time of the conveyance, was seized of an indefeasible estate in fee simple, in the premises granted.

2. That the estate was, at such time, free from incumbrance done or suffered by the grantor, or any one claiming under him.

3. For the further assurance to be made by the grantor and his heirs, to the grantee, his heirs and assigns.

These provisions were enacted in the law of February 16, 1843, (Rev. Stat. of 1843, 204, section 6,) and it is declared that the deed may be sued upon in the same manner as if such covenants were expressly inserted in it. Such continued to be the law in this state, until the taking effect of the Code, by which the form of conveyance, with the covenant of warranty, is given as adopted by the parties to the present suit. Looking to the language used therein, and taking the same in connection with the law as it existed at the time of the adoption of the Code, we are of opinion, that the covenant given in the form "for a deed in fee, with warranty"—wherein the grantor covenants to "warrant the title against all persons whomsoever"—was intended to include the usual covenant against incumbrances; by which we understand a covenant that the estate was free, and should remain free from incumbrances done or suffered by the grantor, or those under whom he holds, and which was broken, if the incumbrance existed at the time of the conveyance, though there had been no interruption to the grantee, nor claim or demand made upon him on account of the same; and the measure of damages for the breach of which, is the amount paid to remove the incum-

brance, with interest, provided the same do not exceed the amount of the purchase money and interest.  *Foote* v. *Barret*, 10 Ohio, 317, and note of Reporter.

We think that defendants cannot complain that such effect is given to their covenant of warranty.  They have undertaken to convey to plaintiff a fee simple title to the property, and to warrant the same to them against all persons whomsoever.  This is the highest estate known to the law, and as it includes every lesser estate, so the covenant of general warranty, in the form and words of the statute, must be understood to include and imply every lesser covenant of title.  It will not be permitted to the party, to allege that he covenanted against any eviction or disturbance, by paramount title, but not against incumbrances done or suffered by him, which in regular and legal sequence, may ripen into such title.  If incumbrances exist, then the grantee does not acquire a perfect legal title, and the grantor must respond in such sum as shall be sufficient to make him whole, in the complete sense in which one may claim to be made whole, who takes a conveyance for the fee simple title, with covenants of general warranty.

Judgment reversed.

Upon the filing of the foregoing opinion, *Starr & Phelps*, for the appellees, presented the following

PETITION FOR A RE-HEARING:

We are not in the habit of complaining of the decisions of this Court, or of asking a re-hearing in doubtful cases. This is the first application of the kind we have ever made; and nothing but a perfect conviction that, in this case, the law is with us, has induced us to ask the Court to re-consider its decision.  Although the amount in controversy is small, the question involved is of the highest importance.  This consideration, together with the fact that our former argument was little more than the statement of a case, which seemed to us to argue itself, is, we trust, a sufficient apology for this petition.

STATEMENT OF THE CASE.—July 6th, 1854, defendants

conveyed to plaintiff, a part of Lot 197, in Burlington, Iowa, for four thousand two hundred dollars. The form of the deed is—"For the consideration of four thousand "two hundred dollars, we (the grantors) hereby convey "unto John Adam Funk, the following real estate, to-wit," &c. The only covenant in the deed is as follows: "And "we warrant the title against all persons whomsoever, ex- "cept the lessees now in possession, and the leases on said "real estate from us." The plaintiff commenced his action on said covenant, before a Justice of the Peace, setting forth the covenant, and averring that, at the date of said deed, the taxes of 1854 had been assessed, and were in- cumbrances on said real estate; that he had paid them be- fore sale, and in fact before any steps had been taken to enforce their collection; and claiming to recover the amount, twenty-two dollars and five cents, "by virtue of said warranty as aforesaid." To this petition, defendants, Criswell and wife, the only parties served with process, de- murred, for the following reasons:

1. That the action was founded on an alleged breach of the covenant of general warranty, but did not set forth any breach of that covenant, or allege any eviction, actual or constructive.

2. That the petition showed on its face, that the taxes were, at most, a mere incumbrance on the land; that no sale for said taxes had taken place; that the incumbrance had not ripened into a title; and did not aver that there was, or had been, any superior title to the property.

The justice overruled the demurrer and rendered judg- ment for plaintiff. The defendants took the case to the District Court, by writ of error, where the decision below was reversed, and judgment entered for defendants. The plaintiff appealed to this Court, and assigned for error the sustaining of defendants' demurrer.

ARGUMENT.—The sole question in this case is, whether thé form for a "deed in fee with warranty," in section 1232 of the Code of Iowa, includes a covenant against incum- brances. The language of the Code is—"the following, or

"other equivalent forms, varied to suit circumstances, are "sufficient for the purposes therein contemplated:

*"For a deed in fee simple without warranty.*

"For the consideration of ——— dollars, I hereby con-"vey to A. B., the following tract of land, (describing it).

*"For a deed in fee with warranty.*

"The same' as the last preceding form, (*i. e.* the form "above quoted,) adding the words, and I warrant the title "against all persons whomsoever, (or other warranty as "the parties may desire."

Section 26 of the Code, on the "construction of stat-utes," provides that "technical words and phrases, and "such others as may have acquired a peculiar and appro-"priate meaning in law, shall be construed according to "such peculiar and appropriate meaning." And to this rule no exception is made. If then the words and phrases contained in the form above given, have acquired a pecu-liar and appropriate meaning in law, this Court must con-strue them according to that meaning. This point was made in our former argument, and we cannot but remark, that in their opinion the Court have passed it over in silence. If this rule of construction does not apply to the form for deeds given by the Code, upon what principle does it apply to any other section? It is the broad and only rule of construction given for technical words and phrases; if the Court intends to limit its application, it is of the highest importance to the profession and the public, to know precisely how far it extends. If, on the other hand, the Court recognizes this rule, as applying to the entire Code, then, if we can show that the words and phrases used in the given form, have acquired a peculiar and appropriate meaning in law, we insist that they shall be construed according to such meaning.

I. Then, have the words "deed in fee," and the word "convey," acquired a peculiar and appropriate meaning in law? And if so, what is it? The controlling word "fee," or "fee simple," signifies simply an estate in lands in a man and his heirs forever; and is used in contradistinction

to words creating a lesser estate. 2 Bl. Com. 104; Tomlins Law Dic. 761, title "Fee and Fee Simple;" 4 Kent, (2d ed.) 5; Littleton, chapter 1, section 1. He who obtains a grant of a fee, acquires the highest title known to the law, provided his grantor has it. The conveyance of a fee, without covenants, implies no warranty whatever.— Judge Kent, (4 Com. 461, 2d ed.,) says: "I apprehend "that a deed would be perfectly competent in any part of "the United States, to convey the fee, if it was to the fol- "lowing effect: I, A B, in consideration of one dollar to "me paid by C D, do bargain and sell, or grant to C D "and his heirs, the lot of land, (describing it). Witness "my hand and seal," &c. That he did not intend to include a warranty in that form, is evident from 4 Kent, 474, where he says, that the sale of the fee does not imply any covenant of title. That such a form does not include a covenant for title, is expressly decided in *Frost* v. *Raymond*, 2 Caines, 188, the leading case in this country on this point.

After reviewing the authorities, the learned judge (Kent) says: "*It is a settled position*, that an estate in fee, may "be created by the usual and solemn form of conveyance, "without any warranty, express or implied, and that a "conveyance in fee, does not *ipso facto* imply a warranty. "If it does, our books would be inconsistent and uninteli- "gible on this subject." Again, in the same case, he says: "They (the Court of King's Bench, in *Bree* v. *Holbech*, "Doug. 454,) adopted the old rule, that if there be no cov- "enant of title in a deed, the purchaser takes, at his own "risk, the goodness of the title. After this rule has been "so long understood and practised upon, it would be of the "most mischievous consequence to establish a contrary "doctrine. The parties to deeds, know that a covenant is "requisite to hold the seller, to warrant the title, and they regulate "their contracts accordingly;" and "If there be any "fraud in the sale, the purchaser has his remedy," by action on the case for deceit. Again, in 4 Kent, 474, he says: "It may not be very inconvenient that these granting

"words, should imply a covenant against the secret acts "of the grantor, but beyond that point there is great "danger of imposition upon the ignorant and unwary, if "any covenant be implied that is not stipulated in clear "and precise terms." And again: "In North Carolina, "the words give, grant, bargain, sell, &c., have been de-"nied to imply any warranty of title; and this is the con-"clusion which sound policy would dictate. To imply "covenants of warranty from the granting words in a deed, "is making those words operate, very often, as a trap to "the unwary." The case of *Frost* v. *Raymond*, is cited as establishing this point, in 4 Greenl. Cruise, marg. 369, n; in Rawle on Covenants for Title, 471 2, and 4 Kent, 474; 2d ed.; see also, *Prickets* v. *Dickens*, 1 Murphy's Rep. (N. C.) 343; *Powell* v. *Lyles*, ib. 348; *Pollard* v. *Lyman*, 1 Day, 156.

The only word which has ever been held to imply a covenant for a title in a deed of real property, is, "*dedi*" or "give," of which Rawle says, (p. 472), "it may be "doubted whether such an effect would be given even to "this word." See also, *Young* v. *Hargraves, adm'r*, 7 Ohio, (part 2,) 63; *Pringle* v. *Sturgeon*, 6 Littell, 112; *Black* v. *Gilmore*, 9 Leigh, 449; *Gee* v. *Pharr*, 5 Ala. 588; *Allen* v. *Sayward*, 5 Greenl. 230; *Deakins* v. *Hollis*, 7 Gill and Johns. 311; *Huntley* v. *Waddell*, 12 Iredell, (Law) 33. See also, *Funk* v. *Voneida*, 11 Serg. and R. 112, cited in the opinion, in which the Court says: "The rule as to the vendee, is *caveat emptor*." The only case in this country, where this principle has been doubted, is *Christine* v. *Whitehill*, 16 Serg. & R. 111, which was decided by a bare majority of the Court, and was afterwards expressly overruled by the same Court, in *Whitehill* v. *Gotwalt*, 3 Penn. 326.

That the word "convey," used in our form, was not intended to imply any warranty, or as a substitute for *dedi*, and that the conveyance of a fee simple title, and without covenants, was not designed to imply any warranty, is palpable, from the fact that the form provided for a conveyance

Funk v. Creswell et ux.

of the fee simple with warranty, is precisely the same as that provided for its conveyance without warranty, adding the words, "I warrant the title," &c. We submit, that neither at common law, nor under the Code, does the conveyance of a fee, *ipso facto*, imply any warranty or covenant whatever, and that the words used in the form provided in the Code for its conveyance, merely pass the fee simple title, if the grantor has it, of which *caveat emptor*.

II. We proceed to inquire whether the words, "and I warrant the title against all persons whomsoever," have acquired a peculiar and appropriate meaning at law; and if so, what that meaning is. And here we premise, that the Code nowhere uses the words "general warranty;" it is simply "warranty." The former statute provided that the words "grant, bargain and sell," should imply the five covenants of seizin, right to convey, quiet enjoyment, against incumbrances, and general warranty. This statute was repealed by the Code. From the expressions, "other equivalent forms, varied to suit circumstances," and "or other warranty, as the parties may desire," it is evident that the intent was, not to extend the meaning of the particular words, or to attach any peculiar significance to the warranty, but simply to furnish a short form for conveying real estate, and to prune the common form "of the prolixity of its provisions, and the usual redundancy of its language," as sensibly suggested by Judge Kent, leaving the parties to make their own covenants. We cannot find a line or expression in the Code, which justifies any other conclusion, and had not our policy formerly been different, no other idea would, we think, have occurred to any one.

The form of warranty, given in the Code, is precisely in substance that of the covenant of general warranty at common law, as given by Rawle on Cov., 240; it warrants, in both cases, the "title" against "all persons." This covenant has, so far as we can ascertain, universally received the same construction. There is scarcely a phrase in the English language, which has received so uniform a con-

struction by the judicial authorities. We know of no case which has extended it beyond a warranty, that there is no superior title; or held it broken, until eviction. The courts of every State, whose decisions are quoted in the opinion on file in this cause, as well as the United States Supreme Court, have repeatedly so decided. See 4 Kent, 471; Rawle on Cov., 240–1; 4 Greenleaf's Cruise, marg., 378, n.; *Day* v. *Chism*, 10 Wheat. 449; 6 Cond., 181; 1 Mass., 464; 2 Ib., 438; 2 Hill, 105; 2 John. 1; Ib., 395; 7 Ib., 258; Ib., 380; 11 N. Hamp., 82; 1 Aiken, (Vt.) 233; *Rich* v. *Wait*, N. Chip., (Vt.) 68; 3 Bibb, 117; 15 Ills., 18; *Johnston* v. *Nice's Exr.*, 17 Ohio, 66; *Nice's Exr.* v. *Oberty*, Ib., 71; 1 Blackf., 102, note; 2 Greenl. Ev., § 244; 6 Barbour, 165; *Davis* v. *Smith*, 5 Geo., 274; *Patton* v. *McFarlane*, 3 Penn., 419; *Clark* v. *McAnulty*, 3 Serg. & R., 372; *Paul* v. *Witman*, 3 Watts & Serg., 407, 410; 3 Bibb., 174; Ib., 282. Upon these authorities, we claim that the general warranty is only a warranty that the title is good, and that the grantors will forever warrant and defend it. The contract made by it is this: I guarantee that there is, and shall be no superior title found to this land; if there is, I will pay you back the consideration money, and interest, immediately upon your eviction.

But what is this title? It is the just means whereby the owner of land has the possession of his property; Rawle on Cov., 48; 2 Bl., 195; or as Tomlin expresses it, "title is generally applied to signify the right to land and real effects." 3 Tom. Law Dic., "Title," 625. When the grantor warrants the title, then, he simply guarantees the right by which he holds his land; that right is presumed to be good, until a superior adverse right is judicially established: therefore, say the authorities, if plaintiff surrenders to a superior title, without judgment of law against him, the burden of proof is on him, in an action on the covenant of warranty, to show that the title to which he surrendered is superior to his own. *Hamilton* v. *Cutts*, 4 Mass., 349; *Prescott* v. *Truman*, Ib., 627; 4 Greenl. Cruise, marg., 378, n.; *Stone* v. *Hooker*, 9 Cow., 154. We need hardly say

that a mere incumbrance or lien, is not a superior title; *non constat*, that it ever will become one.   The measure of damages in an action on the covenant of warranty, is the value of so much of the land as plaintiff has been evicted from, with interest, either at the date of the conveyance, or of the eviction—the rule differing in different States; the former is the rule settled by this Court, in a case not yet reported.   We know of no rule authorizing nominal damages in this action.   If, then, the plaintiff may recover without eviction, he recovers his money when, *non constat*, that he will ever lose his land.   This is the very reason of the rule: If he finds a superior title, and purchases it for never so little, still defendant must pay him back his money, because he received no consideration for it.

It will not do, then, either upon authority or principle, to say, that plaintiff may sue on this covenant and recover, by showing that when he purchased, there was a mere incumbrance on the land, which he voluntarily paid off before it ripened into a superior title; for, *non constat*, that defendant would have paid it, or that it would ever become a title, or a superior title.   It would be a marvelous tax title, if it did.   Again: suppose there had been a tax title on the land, and plaintiff had bought it in, without judgment, would he not have been compelled to show that the tax title was superior to defendants'?   And could not the grantor have defended successfully, by showing that the tax was invalid?   Yet, here he sues before there was any tax title for these taxes, let alone a good one.   We conclude, then:

1.   That the Code has repealed the old law, and in its place substituted the common law, shorn of its redundancies, but unchanged in its principles.

2.   That in an action on a covenant of general warranty, plaintiff must aver and show an eviction by a superior title.

And here we might rest; but it may be advisable to advert to some of the positions contained in the opinion on file in this case.   This we shall do frankly, but with the

highest respect for the honesty of purpose with which, we know, the Court have approached this case, feeling confident that if they have committed an error, they will most cheerfully correct it. And first, we most respectfully observe, that in our judgment they have established rather what they think the law ought to be, than what it is.— That high authorities have doubted the policy of our old law, and of that given to the Code by the decision of this Court, we have already shown; and that our legislature did intend to abandon that policy, we think we have established. The conclusion of the Court that, because our former statute provided that the words " grant, bargain and sell," should imply the five express covenants, the intent of the Code is to include those covenants in the covenant of general warranty, is, to our minds, a *non sequitur*. The same reasoning would revive the old valuation law, and any other statutes which were in force here for the same length of time.

Our reasoning brings us to directly the opposite conclusion. We think that the repeal of the old law and the enacting of a new one, without any such provision, proves, that the legislature intended to abandon the doubtful policy of the former statute. In other words, that they repealed the old law, because they intended to repeal it, and did not re-enact it for the same reason. The history of this species of legislation shows, that wherever any State has adopted the policy of implying covenants, it has done so by enlarging the meaning of the granting words, and not by extending the covenant of general warranty. We can find no instance where the latter course has been pursued. Can we presume, then, that our legislature intended to adopt this novel policy, in the absence of any expression to that effect? Would it not be indeed a " trap," for not only the " ignorant and unwary," but for the wise also? Who would suppose that the five covenants lay hidden beneath the well defined phraseology of the covenant of general warranty? If one consults the common law, he finds a unanimous series of decisions as to its

Funk v. Creswell et ux.

meaning; if he examines the Code, he finds no expression which seems to change that meaning. He could come to but one conclusion. One word further on this point: but four States, Pennsylvania, Indiana, Illinois and Ohio, besides our own, have adopted the policy of our old law.— Every one of these States has, as the above authorities show, decided that the covenant of general warranty is broken only by eviction. A large portion of our new citizens, then, may be misled by this decision, while all but those from the four States mentioned, would have been by the provisions of the old law. May we not infer that such considerations, induced the legislature to return to the well defined paths of the common law, and so to leave its provisions that he who runs may read.

Again; we would suggest, whether the reasoning of the opinion does not prove too much. If it is sound, it proves that a covenant of general warranty is broken by the voluntary payment by the purchaser of a mere incumbrance, which is in conflict with all the authorities we have cited on this point. We have already referred to decisions in New Hampshire, Vermont, Massachusetts, Connecticut, New York, Kentucky, Illinois, Indiana, Ohio, Pennsylvania and Georgia, upon this point. In Maine, the same doctrine is recognized. In *Curtis* v. *Deering*, 3 Fairfield, 501, cited in the opinion of this Court, the Court says: " It is " contended that plaintiff, having never entered into the "land, could not be evicted, and cases are cited to show " that there must be an eviction by judgment of law, or " or otherwise, or a voluntary surrender to a claim which " could not be lawfully resisted, or a purchase and extin- " guishment of the paramount title. This doctrine is well " established by the authorities relied upon, *and we are not* " *disposed to question it.*" We have carefully examined the authorities cited in the opinion, and respectfully suggest that they do not sustain the decision. 22 Pick, 490 ; 7 J. R. 358 ; 16 Ib. 122 ; 10 Pick, 204 ; 17 Mass. 213 ; 4 Ib. 629 ; 22 Vt., 104 ; 10 Ohio, 317, and 11 S. & R., 109, are all actions on the covenant against incumbrances, and in every one, except the last, there was an express cove-

nant against incumbrances, and in the last case, that cove-
nant was implied by special statute, from the words "grant,
bargain and sell," in the deed.   In the cases in 11 N. H.,
74; 4 Hill, 643; 6 Barbour, N. Y., 165; 5 Ohio, 155; 1
Aiken 233; 1 Blackf. 102, n., and 3 Fairfield, 499, an evic-
tion was held necessary to a breach of general warranty.
The case in 9 Cow., 154, holds the same doctrine, and sus-
tains *Hamilton* v. *Cutts*, 4 Mass., 349, as to the burden of
proof, when plaintiff voluntarily surrenders.   The case in
3 Cushing, we have not been able to find.   In 6 Barbour,
165, cited by the Court, it is said: "From these conflicting
" authorities, (conflicting only as to what constitutes an
" eviction,) I deduce the true rule in this State to be, that
" there must be an actual disturbance of the possession," to
constitute an eviction.   And 4 Kent, 476, evidently refers
to covenants against incumbrances, of which the author is
speaking, *vide* 474.   Any other construction is irreconcila-
ble with the doctrine laid down by him, on page 471, as to
the necessity of eviction.   What he says about the reme-
dy in equity, also refers, we think, to the same covenant.
As applied to that covenant, the paragraph quoted may be
law, but we insist that this doctrine does not apply to the
covenant of general warranty.   This point is expressly de-
cided in *Simpson* v. *Hawkins*, 1 Dana, (Ky.,) 305, and in
*Fubank* v. *Pollard*, 3 Ib. 144, where the law is said to be,
that where the grantor is solvent, the grantee has no reme-
dy but on the covenant of warranty, but where he is *insol-
vent*, the grantee may file his bill *quia timet*, and upon
showing that the grantor is *insolvent*, and that he has good
reason to apprehend the loss of his title, the Court will en-
join the payment of sufficient of the purchase money to pay
off the incumbrance.   It is not pretended in this case, that
defendants are insolvent.

It is said, that in a certain sense, the covenant of gene-
ral warranty may be said to include all the others.   It is
true, that a breach of any other covenants, may *result* in a
breach of the general warranty, but it by no means follows
that a breach of one of the former, is a breach of the latter.
They are independent covenants; the first four were intro-

duced to remedy defects to which the other did not extend; and if we hold that they are included in the latter, we deny the necessity of their creation, and come in conflict with the numerous authorities on this subject.   Rawle on Cov., 234, says:   " In Pennsylvania, it (the covenant of general " warranty,) has been retained by unprofessed scriveners as " a nostrum, supposed to contain the virtues of the whole " five, but its potency has not been recognized by the " bench."

It is also said that defendants ought to have paid this money, and that they cannot complain if plaintiff recovers. The premise may be true, but the conclusion is " inconsequent."   It is every man's duty to pay his debts, but a third party cannot make himself his creditor, by voluntary payment of them.   Defendants had their own time to pay the debt.   5 Cow., 195.   They could pay before or at the sale, or redeem afterward, and *non constat*, but they would have done so.   The plaintiff acted prematurely ; he should have bid the land in at the sale, and then, *if the title was superior*, the breach would have been complete.   It is also said that if incumbrances exist, the title is not perfect; upon this point we most respectfully differ with the Court.— Within the meaning of this covenant, the title is always perfect and the covenant unbroken, until a superior title is found.   What would be said of a lawyer, who in an action of right, would plead *unpaid taxes*, without sale, as a *superior title*.   If not a superior title, the covenant is not broken, or the authorities cited above are not law.

We have said all that seems necessary on this case, and we ask the Court to give our argument, and the authorities cited, a careful examination.   We feel that a decision against defendants would not only do them injustice, but would reinstate a most mischievous policy, which we believe the Legislature have purposely repudiated.   This is our apology for so extended a petition.   We ask that the case may be re-heard.

And at the same term, STOCKTON, J., filed the following opinion, overruling the petition for a re-hearing:

STOCKTON, J.—The statement of facts contained in the petition for re-hearing, is correct so far as it goes. It should have added, however, that payment of the taxes had been demanded of defendant, who had refused to pay them, before they were paid by plaintiff. With this correction, the statement is the same as that given in the opinion of the Court. These facts being admitted to be true by the demurrer, we are relieved of the necessity of any inquiry into the fact, whether the tax was a valid tax or not; or whether, if the plaintiff had purchased the property at the tax sale, the tax title would have been a superior title to that conveyed to plaintiff by defendants. Certainly, if the tax was an incumbrance in the accepted meaning of the term, it was in a fair way to become the superior title. If the defendant, however, wished to contest that question, he should not have rested his case on the demurrer. It is hardly necessary for us to suggest, that there was a legitimate mode of testing the question of the regularity and validity of the tax.

The question to be decided, is whether the form given by the Code, (section 1232), "for a deed in fee with warranty," in which the covenant is to "warrant the title against all persons," was intended to include a covenant that the premises are free from incumbrances. This covenant, it is admitted, is the same as the common law covenant of general warranty. It is needless, then, to inquire whether the effect of the statute would have been different, had the words "general warranty" been used by it, instead of the word "warranty" only. "General warranty" is used in contradistinction to "special warranty." Warranty, and general warranty, are the same in meaning. It is to be remarked, however, that the form given by the Code, is "to warrant the title against all per-

sons." The distinction is not essential or important, in the view we take of the meaning of the form given by the statute; it is only noticeable, as illustrative of the fact, that it is as easy for the legislature to change the meaning, as the words of the covenant.

We see no reason for yielding the position, endeavored to be maintained in the opinion of the Court, that the words, "deed in fee with warranty," have acquired a "peculiar and appropriate meaning in law," and are to be construed accordingly. This meaning, according to our construction of the words, is a perfect title, and the title is not perfect, if incumbrances on the premises exist at the time of the conveyance. We say this much to relieve ourselves of any suspicion, of having designedly passed over in silence, without notice, the points and arguments of the counsel, against whom we were compelled to decide. Where the conveyance is to be by "good and sufficient deed," or where it is to be a perfect legal title, which a deed in fee simple with warranty, is understood to convey, the vendor will not be permitted to discharge his obligation with a conveyance, good in point of form. An agreement to convey land, by good and sufficient deed, is not complied with by the mere giving a warranty deed, where the grantor had no title to the land, or when his title is imperfect. It must be a deed, good and sufficient, both in form and substance, to convey a valid title to the land. *Everson* v. *Kirtland,* 4 Paige, 638; *Fitch* v. *Casey,* 2 G. Greene 300. The purchaser's right to a title, clear of defects and incumbrances, is recognized and enforced, both in this country and in England. This right, (says Rawle, 566), is one, not growing out of the agreement of parties, but which is given by the law. *Souter* v. *Drake,* 6 B. & A. 999; 2 Sug. on Vend. 2; and it naturally follows, that a court of equity will not decree the specific performance of a contract, where the title is bad, or even where it is doubtful. Hence, when an incumbrance exists, which it was not agreed should enter into and form part of the consideration, the vendor must discharge it, before

he can call for a completion of the sale. Rawle on Cove-
nants for Title, 567, 568: 2 Sug. on Vend., 419

The conclusion we seek to draw from these authorities,
is that the perfect legal title does not pass where incum-
brances exist, against the property conveyed; and that
where a party makes a conveyance after the form termed
by the statute, "a deed in fee, with warranty," there is
implied in the covenant therein given, every other cove-
nant necessary to insure a perfect title to the grantee, as
well as indemnity for its failure. ·

It may be readily conceded, that the words, "grant,
bargain, and sell," in the creation of a fee-hold, by the
common law, imply no warranty whatever, and that the
conveyance of a fee, does not, *ipso facto*, imply any war-
ranty. The question is, however, what the statute means
by "a deed in fee, with warranty," and what covenants of
title the party agreeing to take such a deed, has a right
to expect it shall contain. The legislature of Iowa, in
1843, had provided by statute, that the words "grant, bar-
gain, and sell," should be construed to be express cove-
nants: 1. Of Seizen; 2. Against incumbrances done or
suffered by the grantor or those claiming under him; and
3. For further assurance.

They had high precedent and sanction for such enact-
ment. A similar provision had been made by act of Par-
liament in England, (6 Anne, ch. 35), in 1707. It was
re-enacted in Pennsylvania, in 1715, and was subsequently
adopted, almost without alteration, in the following states
of the Union—Indiana, Illinois, Alabama, Mississippi,
Arkansas, Missouri, and Iowa. For the construction
given to this statute by this Court, see *Brown* v. *Tomlinson*,
2 G. Greene, 525. The construction of the statute of
Pennsylvania, was carefully considered by the Supreme
Court of that state, in the case of *Gratz* v. *Ewalt*, 2 Bin-
ney, 98, and it was held, that none of the covenants
implied by the statute, were to be construed as extending
beyond the act of the covenantor. Chancellor Kent says,
(4 Com. 474), "By this decision, the words of the statute

are divested of all dangerous tendency, and it will equally apply to the same statutory language in other states."

The danger, then, was no longer to be apprehended, of imposition upon the ignorant and unwary, from covenants being implied that are not stipulated in clear and precise terms, or making the words from which they were to be implied, operate as a trap to the unwary. The covenants thus created, are limited to the acts of the grantor and those claiming under him. The design of the act, to a great extent, was to curtail the covenants for title, which had continued to increase until their length had been found to be oppressive. The more extended object was, however, to introduce into every conveyance of real estate, the usual covenant of title; in other words, to make the conveyance itself the covenant of warranty. The statute of 6 Anne, ch. 35, was followed up in England, by the act of the 8 and 9 Victoria, ch. 119, (1845), which defines the meaning and effect of the several covenants of a deed, and gives a form for each, shorn of all inconvenient prolixity. A short form of a deed is given, not unlike the ordinary deeds of bargain and sale in this country. By adopting the provisions of the English statute of Anne, into our system of conveyancing, the legislature made a commendable attempt to remedy the evils resulting from the prolixity and redundancy of the old system. By adopting the forms embodied in the Code, we think that, instead of resolving to go back to the old covenants of assurance, they essayed to take another step forward, and to imply the usual covenants of conveyance from the general covenant of warranty, rather than from the granting words of the deed.

By the petition for a re-hearing, it is claimed that in an action on a covenant of general warranty, the covenantee must aver and show an eviction by a superior title. We have endeavored to show in the opinion of the Court, that this position is not well taken, if by eviction is intended, actual dispossession. RAWLE, in his work on covenants for title, cited by defendant, says (page 257) : " There

can hardly be said to be a class of cases now entitled to rank as authority, which hold that an actual dispossession by process of law, consequent upon a judgment, is necessary to a breach of a covenant of warranty." No such narrow interpretation is now given to the term dispossession, or eviction. The courts have departed from the stern technical rules of requiring actual ouster or eviction, and have held the concurrence of certain acts, equivalent to actual eviction by due process of law. The cases are classed by RAWLE, under two different heads : 1. Where the dispossession is actual : 2. Where there is a virtual or constructive eviction. Actual dispossession is : 1. By process of law consequent upon a judgment : 2. By the exercise of the common law right of entry ; and 3. By surrender to the adverse title.

The result of the authorities on the subject, is, that where the holder of the adverse title has the power to obtain possession under it, as by entry ; or to deprive the purchaser of his possession, as by process under a writ of execution, and adversely asserts or prosecutes his right ; the covenantee may anticipate its actual exercise, and voluntarily surrender the possession, by which *ouster in pais*, a sufficient eviction will be caused, to support an action on the covenant. The burden of proof is on him, however, to show that the results he anticipated were inevitable. Rawle, 265. Virtual or constructive eviction, it is held, takes place :

1. Where the covenantee never has had actual possession, having never been able to obtain it, by reason of the adverse title. The existence of the better title, with actual possession under it in another, is, of itself, a breach of the covenant. *Grist* v. *Hodges*, 2 Devereux, 200. If the grantee finds the premises in possession of one claiming under a paramount title, the covenant for quiet enjoyment, or of warranty, will be held to be broken, without any other act on the part of either the grantee or the claimant, for the latter can do no more towards the assertion of his title, and as to the former, the law will compel

no one to commit a trespass, in order to establish a lawful right in another action.   Rawle on Covenants of Title, 268, 9, and authorities cited.

2.   Where the covenantee accepts a lease or other conveyance under an adverse title established by judgment, and remains in possession.

3.   Where he accepts the lease, although no judgment has established the adverse title.   The case of *Hamilton* v. *Critts*, 4 Mass., 350, first established the rule as to voluntary dispossession, or *ouster in pais*.   That the law does not require the idle and expensive ceremony of being turned out by legal process, when that result would be inevitable, see *Clark* v. *McAnulty*, 3 Serg. & R., 372, and *Greenvault* v. *Davis*, 4 Hill, 646.   The case of *Sprague* v. *Baker*, 17 Mass., 590, went still further, and the Court held, that where the deed contained covenants for quiet enjoyment and warranty, and the covenantee paid the amount of a mortgage, upon being threatened by the mortgagee to sue for the possession of the premises, it amounted to a disturbance of the possession; and if plaintiff had been compelled to purchase in another title, for his own security, and to avoid interruption, it was a breach of the covenant for quiet enjoyment.   The mortgage was placed on the same footing as a paramount title established by judgment, and where such title has been established by a court of competent jurisdiction, there is no objection to a purchase or lease of it being made by the covenantee, and the idle ceremony of actually and formally leaving the possession, in order formally to return to it, is unnecessary.   In *Whitney* v. *Dinsmore*, 6 Cushing, 124, the same Court, in a similar case, said: "The premises were offered for sale at public auction, and if the plaintiff had not become a purchaser, he had a right to presume that he should be dispossessed by the purchaser, and he was justified in acting upon that presumption; and the defendant could not be thereby injured, for undoubtedly, if the plaintiff had not become a purchaser, he would have been evicted, if he had refused to yield possession, and, in such case, the defend-

ant would be responsible for the costs of suit in the action against the plaintiff, as well as for the value of the land, if duly notified of the pendency of the action." See, also, *White* v. *Whitney*, 3 Met., 83; *Donahœ* v. *Emery*, 9 Ib., 68; *King* v. *Kerr*, 5 Ohio, 154; *Dupuy* v. *Rœbuch*, 7 Ala., 488.

No distinction is made between a voluntary retirement, when the paramount title is, and when it is not, established by a judgment of a competent court, it being sufficient, either that the holder of such title has the right to obtain possession himself, or deprive the purchaser of it. The only difference is, that the covenantee retires at his peril, when there is no such judgment, and is required to prove that the adverse title was such that he would have been compelled to yield to it. Rawle, page 289. If the covenantee purchase an outstanding paramount title, when that title is actually asserted, it is such an eviction as will entitle him to damages upon his covenants for quiet enjoyment and warranty, measured by the amount he has thus paid. The case of *Loomis* v. *Bedell*, 11 N. H., 74, cited in the opinion of the Court, is in point here. There had been a prior conveyance by the covenantor, of part of the premises, to other parties. On the death of one of the prior grantees, his interest in the land being offered for sale by his administrator, was purchased by the plaintiff; and it was held that these facts constituted an eviction.

4. When the eviction is not of the land itself, but of something which represents it, or of some incident of its enjoyment. At common law, warranty extended to rents, commons, and all things issuing out of the land, and to incorporeal hereditaments. 2 Black. Com. 18; Co. Litt. 388. If a man grants all his lands, by the name of land, everything terrestrial passes, and when a warranty accompanies such a grant, it extends over the whole subject matter. The case of *West* v. *Stewart*, 7 Barr, 123, was an action against the grantor in a deed with covenant of warranty. There was a house on the premises at the date of the deed, which was afterwards removed by a tenant, under

a prior agreement between the tenant and the grantor, by which the tenant had the right to remove the building at the expiration of the lease. It was held, that the removal was a breach of the covenant. The same decision was made in Kentucky, in the case of the removal of a log cabin. *Combes* v. *Fisher*, 3 Bibb, 51; *Mott* v. *Palmer*, 1 Comstock, 527.

The practical distinction between a covenant of warranty, and the covenant for seizin and against incumbrances, is stated to be this: that under the latter covenants, the purchase of an adverse claim has nothing to do with their breach. If the title be defective, or if an incumbrance exist, these covenants are broken as soon as made, and the purchaser's right of action is not affected by the purchase of the paramount claim,—such a purchase merely affects the question of damages. It is sufficient to constitute a breach of the covenant of seizin or against incumbrances, that such claim or incumbrances exists, whether asserted or not. But to constitute a breach of the covenant of warranty, it is necessary that the adverse claim be hostilely asserted. It is not necessary that it be asserted by judgment, or even by a suit. The distinction is not, whether there has or has not been a judgment in favor of the paramount claim, but it is, whether such claim has or has not been adversely asserted. Rawle, 298.

It will thus be perceived, how the earlier and more rigid rules in relation to the covenant of warranty, have yielded to the current of authority in favor of a more liberal doctrine. When the courts have decided that, the eviction, necessary to constitute a breach of the covenant, may be either actual or constructive; that evidence of paramount title in another, and of possession yielded to it, is sufficient that if the paramount title be hostilely asserted, the covenantee need not wait for the premises to be offered for sale under execution—nor for judgment to be obtained—nor even for a suit to be brought—but may discharge the incumbrance, and resort to his covenant of warranty for indemnification, they have decided all that was necessary to

warrant our judgment for the plaintiff in the present suit.

How does this case differ in principle from that of *Sprague* v. *Baker*, in which it was held that an outstanding mortgage, asserted by the mortgagee, who threatened to sue for the possession of the premises, was a lawful interruption, and a breach of the covenant for quiet enjoyment? Wherein does it differ from that of *Whitney* v. *Dinsmore*, in which it was held, that if plaintiff had not purchased, he had a right to presume that he should be dispossessed by a purchaser, and to act on that presumption, and become the purchaser himself, in order to prevent actual eviction?— The incumbrance of the unpaid taxes, was certainly of as high a character as the outstanding mortgage. ' And when the petitioner urges that an incumbrance or lien, is not a superior title, and that it does not appear that it will ever become one, and that plaintiff acted prematurely in not waiting and bidding in the land at the tax sale, and then suing on his covenant of warranty, it must be borne in mind, that by the demurrer, it is admitted that the tax was a valid incumbrance on the premises sold to plaintiff. If so, we are bound to look at the consequences that may legitimately and in the prescribed order of things, result from leaving the taxes unpaid. Such steps are required to be taken by the county treasurer, as that all lands, on which the taxes levied remain unpaid, are sold to the highest bidder, and the purchaser may institute such further proceedings, as that, if the land is not redeemed, he may acquire a title paramount to all others.

It is no answer to this, to urge that, if a tax title is bought in, the plaintiff, sueing on the covenant, must show that it was a superior title to that conveyed, nor that the grantor may defend successfully, by showing that the tax was invalid. The admission made by the demurrer, stands in the way of the necessity or admissibility of any such inquiry. Nor is it any answer to this, to urge that the superior title, whether in the shape of incumbrance, lien, or prior conveyance, must beadversarily asserted, before the plaintiff's possession is disturbed. No demand for

taxes is necessary to be made by the Treasurer. Code, section 492; acts of 1855, ch. 162, 146. The state is to be understood as asserting its right to have the taxes paid, and the duty of the owner of the property to pay them when assessed. No presumption will be indulged in, that they will not be made by the sale of the property, if not paid, or that the lien created by law, in their favor, is not perpetual and permanent.

The defendant did not have his own time, in which to make payment. The taxes were payable on the 15th of September after the date of the deed, If not paid by the first day of January thereafter, they should at least have been paid by defendant, when his attention was called to the subject by the plaintiff, and when he was required by him to pay them. By his failure and refusal to do so, the plaintiff had no alternative but to pay them himself. By suffering them to remain unpaid, and permitting the premises to be sold, and a title to mature under the tax sale, the objection urged by the petitioner, that his covenant was not against incumbrances, but only that there was no superior title, would clearly be obviated, but that was not necessary. The taxes were to be paid; according to our understanding, they were to be paid by defendants, in order to assure to plaintiff a perfect legal title, which defendant undertook to convey. If the payment of them by plaintiff, prevents the maturing of an outstanding paramount title in a purchaser at the Treasurer's sale for taxes, whereby plaintiff may be ousted, and defendant rendered liable for the the whole purchase money and interests—in such case, we repeat, defendant is not injured, and cannot complain. He cannot complain of being required to refund to plaintiff the amount paid by him, to remove the incumbrance. He will not be permitted to defeat plaintiff's recovery, by alleging that his covenant was against a superior title only and not against incumbrances or unpaid taxes. We think this mode of reasoning legitimate. We find it adopted in *Whitney* v. *Dinsmore*, and by PARKER, Ch. J., in *Loomis* v. *Bedell*.

It is urged by petitioner, that the measure of damages on the covenant of warranty, is the value of so much of the land as plaintiff has been evicted from, with interest, and that there is no rule authorizing nominal damages in the action; and that if plaintiff recovers without eviction, he recovers his money, without losing his land. Herein, it is claimed, lies the reason of the rule, that eviction is always necessary to constitute a breach of the covenant of warranty. It is argued that if the covenantor finds a superior title and purchases it, for however small a sum, the grantor must pay back the purchase money, because it was received without consideration. The following, among other authorities, do not sustain the position assumed, but entirely overthrow it: "If the character of the incumbrance be such as admit of removal, the plaintiff is entitled to recover the amount which he has fairly and reasonably paid to remove it." *Davis* v. *Leyman*, 6 Conn. 255. "If the covenantee purchase an outstanding paramount title, actually asserted, his damages upon the covenant for quiet enjoyment, or of warranty, are measured by the amount he has thus paid." *Leffingwell* v. *Elliot*, 8 Pick. 457; See, also, *Loomis* v. *Bedell*, *supra*, and Rawle on Covenants for Title, 291.

It is GIBSON, Ch. J. in *Stewart* v. *West*, 2 Harris, (Pa.) 338, who says of the covenant of general warranty, that "by reason of its straightness, it has given place in English conveyances, to the common covenants for title against particular defects which it does not reach. In Pennsylvania, it has been retained by unprofessed scriveners, as a nostrum supposed to contain the virtue of the whole five, but its potency has not been recognized by the bench." And, again, in *Dobbins* v. *Brown*, 2 Jones, (Pa.) 75. "It has been thought by country scriveners, and even by members of the profession, to contain the elements of all the rest. But its terms are too specific to secure the grantee against every disturbance, by those who may have a better title."

The learned author of the "*Treatise on the Law of Cove-*

*nants for Title,*" to whose able and thorough work we have had occasion to refer so often in the course of these remarks, holds a different language in regard to it. He says: "Although sometimes it is used, in addition to some or all of the covenants which we have been considering, yet, it is not unfrequently, and in some of the States, it is almost invariably, the only express covenant employed." Rawle on Cov., 217. Again, he says: "Covenants for title should not, and cannot, be regulated in all, or even in most cases, by the artificial and technical rules which properly govern the law of real estate. Reference may be had, therefore, not only to the intention of the parties as expressed in the conveyance which contains the covenants, but also to the local practice of conveyancing itself." "In some of the States, long settled usage has caused the omission of all the covenants for title except that of warranty, which by common practice at least, is looked upon as containing all that is necessary to assure the title to the purchaser." "In Pennsylvania," he says, "the covenant of warranty is, except in very rare and particular instances, the common and only covenant for title which the deed contains. The same is believed to be true of many other States."

Where such has become the practice of the State, it is suggested, that technical rules, based upon a different custom of conveyancing as respects these covenants, lose to some extent their application; and to say that the purchaser should have protected himself by other covenants, is to apply a hard rule in States, where those other covenants are never employed. Where the covenant of warranty, is habitually the only covenant for title contained in conveyances, such a construction should be given to that covenant, as will rather tend to indemnify the purchaser, than to protect the vendor. This may be done, without giving to the covenant of warranty the attributes of a covenant for seizin. But where a vendor has sold land with a defective title, and covenants, (according as the usage of the country interprets the covenant), that he will indemnify the purchaser against any loss consequent

thereupon, it seems hard to decide, that the latter may not, upon the hostile assertion of the adverse claim, quiet his title, and then be indemnified to the extent of the amount, reasonably and *bona fide*, paid for that purpose ; or that in every case in which the very *corpus* of the land has not been the subject of the eviction, no remedy can be had upon such covenant.    Rawle on Cov. 313, 314.

In *Cole* v. *Lee*, 30 Maine, 396, the action was on a covenant of non-claim, between which and the ordinary covenant of warranty, no distinction has in any way been taken.    The Court held that the purchaser was not bound to wait, until measures were taken to deprive him of possession, when his remedy would be fruitless.    But as, under a deed containing the common covenant of warranty against incumbrances, he, as grantee, might remove them, and resort to the covenant of his warrantor for indemnification.    In *Leary* v. *Durham*, 4 Georgia, 601, LUMPKIN, J., says :  " I can say with truth, after a practice of more than a quarter of a century, that I never saw a deed containing in so many words, definite and precise covenants of seizin, right to convey, for quiet enjoyment, against incumbrances, and for further assurance.    These are all designed to be included in the general covenant of warranty against all claims."    In *Caldwell* v. *Kirkpatrick*, 6 Ala., 60, it is held that a covenant of warranty, is equivalent to a covenant for quiet enjoyment.

Upon a full consideration of all the authorities, we think, that the question arising in the present case, is left in little, or no doubt, independent of the statute.    When we refer to that, we think there is no room left for doubt. The first consideration that presents itself to the mind, is as to the motive or reason which could have induced the legislature, to undertake to give us the forms of deeds of conveyance in the Code.    Something more was intended, certainly, than to furnish to the people of the State appropriate forms for convenient reference in the conveyance of real estate.    That would have been an idle task for the legislative assembly to engage in.    Form books in abun-

dance and variety, crowd the lawyer's library and the booksellers' shelves. The forms were designed to be given to the public with the stamp of authority. No one is required to use them, who prefers other or different forms. Other covenants may be expressed, as the parties may desire. But when a particular form is used, as "for a deed in fee with warranty," the covenant therein contained is sufficient for the purposes contemplated. And, as "a title in fee simple with warranty," was contemplated, the premises are assured to the grantee with every covenant necessary to vest in him a perfect legal title in its largest sense—with every remedy requisite for his indemnity, in case of failure of title, and consequent disturbance of possession or quiet enjoyment, whether by liens, incumbrances or otherwise.

Petition for re-hearing over-ruled, and judgment reversed.